## FERGUSON v. KELLOGG LUMBER CO. et al.

### No. 6190.

Court of Appeal of Louisiana.
Second Circuit.

Jan. 13, 1941.

Julius T. Long, of Shreveport, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

HAMITER, Judge.

The Kellogg Lumber Company, a partnership, and also the individual members thereof, are made defendants in this suit in which plaintiff seeks a compensation award, under the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, as for total and permanent disability to do work of any reasonable character.

Under the judgment of the district court, rendered after a consideration of the merits of the case, the demands of plaintiff were rejected. He perfected this appeal.

The brief of defense counsel furnishes the following pertinent statements:

"It is admitted that Kellogg Lumber Company, et als, are liable for any compensation that may be due plaintiff. It is further admitted that plaintiff on Jan. 25, 1939, received accidental personal injuries when a limb struck him across his face, shattering his eye glasses, causing a piece of glass to strike him in his right eye.

"There is only one question involved in these proceedings, namely, was plaintiff paid compensation for a sufficient length of time to compensate him for his injuries?"

The evidence discloses that during the latter part of November, 1938, plaintiff made application for a saw filing job with R. P. Carter, defendants' timber cutting foreman. He was told that none was then available, but that a vacancy would occur the following month. At the request of plaintiff, he was allowed to perform work in the construction of a tram road; and this continued until December 18, 1938, when he commenced the duties of saw filing, scaling logs and keeping the pay roll for defendant.

On January 25, 1939, while engaged in cutting a limb from a tree for the purpose of constructing a saw filing rack, a portion of the limb struck the eye glasses of plaintiff and shattered them, causing the injury complained of. During the same day he was taken to an eye specialist, Dr. A. L. Peters, in Monroe, Louisiana, for attention and treatment. The physician testified: "Examination at this time showed lacerations of skin above and to the outside right eye and over side of right cheek. Lower lid was horizontally cut about four millimeters long and about five millimeters below the pupil in right eye, extending through lid, conjunctiva and sclera, with small string of vitrous protruding in wound."

According to common terminology the conjunctiva is the delicate membrane that lines the eye lids and covers the eyeball in front, while the sclera is the tough white supporting tunic of the eyeball.

Treatment on said date consisted of the cleaning and dressing of the wound and a pulling of the conjunctiva over the cut. The patient was then put to bed in the St. Francis Sanitarium of Monroe where he remained for about eight days.

Further treatments were needed after his leaving the hospital; and these were provided from time to time until February 14, 1939, when the physician discharged the patient from further treatment, being of the opinion that the wound was entirely healed. At that time, however, there was observable a scar on the lower white portion of the eye.

On February 20, 1939, plaintiff returned to his work with defendants. During the period that intervened since the accident, he was paid compensation. From the last-named date until May 27, 1939, or for more than three months, he performed the same duties and received the same rate of wages that he did previous to the accident. On said date of May 27, 1939, his services were discontinued. The reason given for this discharge, according to the foreman, was that the company had just changed its cutting from a tract of soft timber to a tract of hard timber; and that plaintiff was not capable of filing saws for use in hard timber.

Plaintiff called on Dr. Peters again on July 20, 1939, and his eye condition then appeared to be the same as in the previous February when treatment ended.

This suit, in which compensation for total and permanent disability is claimed, was instituted on November 16, 1939. In the petition, and in his testimony, plaintiff asserts that at intervals he is afflicted with a double vision caused by the injury to his right eye.

The defense is substantially that plaintiff is a malingerer; that he neither experiences double vision nor even has an impairment in the sight of his right eye as a result of the accident.

The proof in the record is not sufficient to bring plaintiff's claim within any of those provisions of the Louisiana Employers' Liability statute which relate to the payment of compensation for injury producing disability to do work of any reasonable character, these being subdivisions (a), (b) and (c) of subsection 1 section 8 of Act No. 20 of 1914, as last amended by Act No. 242 of 1928, p. 357; and it is also insufficient for the purpose of invoking here the doctrine announced in Knispel v. Gulf States Utilities Company, 174 La. 401, 141 So. 9, or Barr v. Davis Brothers Lumber Company, Ltd., 183 La. 1013, 165 So. 185, in which cases the mentioned general disability provisions of the statute were held to apply to the given factual situations.

The medical experts testified that they found nothing that would cause his having a double vision; and the facts are, and plaintiff admits, that on resuming his labors in February, 1939, he performed the identical work that he was doing on the occurrence of the accident, and continued this for more than three months. It consisted of saw filing, timber scaling and pay roll keeping. At no time during such period did he complain to his foreman or to his co-workers about an inability to perform the work because of a vision impairment.

To be noticed is the reason given by him for his failing to complain, which was that to do so, he thought, would cause his being discharged. Also to be noted, however, is his admission that he offered no such complaint at the time of or shortly following the discontinuance of his services. It can readily be understood that an employee, who is very much in need of work, might not complain of a disability during the existence of his job for fear of being discharged; but to offer no complaint of that character on the position's termination is not in accord with human nature.

Our appreciation of the evidence is that the dismissal of plaintiff resulted solely because of the fact, as defendant's woods foreman testified, he was not competent, irrespective of the injury, to do the difficult saw filing required by the new operations. In corroboration of the testimony of the foreman on this point are plaintiff's activities for a number of years before the engagement herein involved. According to his own testimony, he performed no saw filing whatsoever for approximately ten years prior to August 8, 1938, this being the fall in which he commenced work with the defendant company. During the greater portion of that period he was a tenant farmer.

It is not our opinion, however, that plaintiff was a malingerer, as the defense contends. Although it appears that he is able to perform the work to which he is accustomed, we think that there exists a definite and serious impairment of the vision of his right eye. Unquestionably the initial blow was severe and damaging; and when examinations were made in December, 1939, and January, 1940, a scar of U shape was still discernible on the sclera of that eye. The left eye was in no manner affected. With reference to the extent of the impairment of the right eye's vision, the experts testifying disagreed; but we think, and so hold, that their testimony preponderately shows a vision one-half normal or a 50 per cent permanent impairment caused by the accident and injury.

In a case such as this, where there is a permanent partial loss of the use or function of an eye, but no disability to do work of a reasonable character exists, the compensation payable shall bear such proportion to the amounts granted for the total loss of the eye as the disability to it bears to the eye's total loss. Paragraph 15, subdivision (d), subsection 1 of Section 8 of the Louisiana Employers' Liability statute.

For the total loss of an eye an employee is entitled to compensation of 65 per cent of his wages during 100 weeks. Plaintiff's wages at and before the occurrence of the accident, according to the evidence, was $3.30 per day for a six-day week. Possessing a 50 per cent impairment in his right eye, claimant is entitled to compensation of one-half of 65 per cent of his wages during 100 weeks, or $6.43½ per week. From this, however, there is to be deducted $28.50, previously paid to him as compensation. Paragraph 18, subdivision (d), subsection 1 of Section 8 of the mentioned statute.

Accordingly, the judgment of the trial court is reversed and set aside, and there is now judgment in favor of plaintiff and against defendants, in solido, in the sum of $6.43½ per week during 100 weeks, beginning January 25, 1939, with 5 per cent per annum interest on each weekly payment from its maturity date, less the sum of $28.50 previously paid to plaintiff.

Defendants shall pay the costs of both courts.