This is a suit for workman's compensation. Plaintiff alleges that, on or about November 21, 1944, while he was engaged in the performance of his duties as night manager of a restaurant, known as the "Nite Life Restaurant," situated at No. 1200 Carondelet Street in the city of New Orleans and owned and operated by a commercial copartnership composed of the defendants, William Johnson and Arden Fairchild, he received a serious injury to his left thumb which he cut with a meat cleaver; that, immediately after the accident, he went to Charity Hospital for treatment and was totally temporarily disabled to do work for a period of six weeks as a result of the injury; that his employment was hazardous within the meaning of the Employers' Liability Act, Act No. 20 of 1914, as amended; that he has suffered a partial permanent disability to his thumb to the extent of fifty per cent. of its total loss of use and that he is, therefore, entitled to receive in compensation the sum of $13 per week, representing 65% of his wages, for the six weeks during which he was temporarily totally disabled and, in addition thereto, $13 per week for a period of twenty-five weeks for the specific disability of fifty per cent. loss of the function of his left thumb.
The defendants admitted plaintiff's employment, his wage and that he was injured in the course and scope of said employment. They, however, resisted liability on the ground that the restaurant business in which they are engaged is not a hazardous industry, as defined by the compensation law, and that, even if the court should find that there are hazardous features connected with it, plaintiff's employment was not hazardous for the reason that he was not required to work in and around machinery or other mechanical and electrical devices contained in the restaurant.
After a trial on the foregoing issues, there was judgment for plaintiff in the District Court for the amount of compensation prayed for. Defendants have appealed.
The main question presented by defendants for our determination in this case is whether the injury sustained by plaintiff is compensable under the law. Defendants maintain that the restaurant business in which they are engaged is neither specially designated as a hazardous occupation under the Employers' Liability Act nor has it been determined by the courts prior to the occurrence of the accident that their business is of a hazardous nature.
[1, 2] The evidence shows, however, that in the operation of their restaurant, the defendants have installed therein mechanical and electrical devices — that is, a meat slicer and meat grinder, powered by electricity. Therefore, whilst the restaurant business is not a hazardous occupation per se, the particular business conducted by defendants is to be regarded as hazardous within the meaning of section 1, paragraph (a), subsection 2 of the Employers' Liability Act, since they operate electrical and mechanical devices or machinery *Page 641 
in connection with their enterprise. It would serve no useful purpose for us to review the many authorities which are decisive of this question. It suffices to say that, since the decision in the leading case of Byas v. Hotel Bentley, Inc.,157 La. 1030, 103 So. 303, the juris-prudence of this state has been well settled that, where a business, not hazardous per se, contains hazardous features such as the operation of machinery as a necessary adjunct to the conduct of the business, any employee whose duties require him to come in contact with the hazardous features of the business is entitled to receive compensation where he is injured during the course and scope of his employment even though the accident occurs while he is performing non-hazardous duties.
Defendants, however, maintain that plaintiff was not only not required to come in contact with the slicing and grinding machine in the performance of his duties but that he was specifically instructed by them that he should not operate those machines.
[3, 4] The evidence in the case is overwhelming to the contrary. Plaintiff testified that he was employed as night manager of the restaurant; that his duties consisted of attending to the cash register and generally running the restaurant when Fairchild, one of the partners, was not present and that, if the waitress in the restaurant was busy, it was incumbent upon him to take orders from the customers and to serve food and sandwiches. He further says that, upon these occasions, he would use the slicing and grinding machines in order that the cook could prepare the food. He is corroborated in his testimony by the cook and the dish-washer of the restaurant, Pearl Sanders and Lessie Boudreaux. The only evidence in contradiction of plaintiff's proof is that given by Johnson, one of the partners, who states that plaintiff's duties did not require him to use the electric slicer and meat grinder and that he was specifically instructed not to do so. Fairchild, the other partner who was in charge of the restaurant when plaintiff was on duty, did not appear and give evidence and no explanation is offered for his failure to appear. It is therefore to be presumed that his testimony would be unfavorable to the defense. In truth, the facts of this case are strikingly parallel to those in the case of Stephens v. Catalano, 7 So.2d 330, recently decided by us, in which matter all of the cases depended upon by defense counsel are cited and distinguished.
Since we find that the injury received by plaintiff is compensable, it remains only to consider the amount of compensation to which he is entitled. The proof shows, without contradiction, that the cut which plaintiff inflicted upon his left thumb was quite deep and painful; that he went to the Charity Hospital for treatment where the wound was sterilized, the bone set and a cast applied; that he was totally temporarily disabled for a period of six weeks and that, as a result of the injury, he has sustained a permanent partial loss of the use of function of his thumb to the extent of fifty per cent. The judge of the lower court awarded him compensation at the rate of sixty-five per cent. of his weekly wage for a period of thirty-one weeks. This means that the judge gave him compensation for the six weeks during which he was temporarily totally disabled and twenty-five weeks for the specific disability resulting from the loss of function of his thumb.
[5, 6] Counsel for plaintiff concede that they were technically in error in praying for compensation at the rate of sixty-five per cent. of plaintiff's wages for one-half of the number of weeks allowable for the total loss of a thumb and, in answer to the appeal, request that we amend the judgment so as to conform to our recent decision in Falgoust v. Maryland Casualty Company, 22 So.2d 312, wherein we determined that the correct method by which to compute the compensation payable for specific disability for the partial loss of function of a member is to take the proportion of the partial loss from sixty-five per cent. of the weekly wage and allow such amount as compensation for the number of weeks permitted for the total loss of the respective member. Applying this rule to the case at bar gives the following result: The compensation payable for the total loss of a thumb is sixty-five per centum of wages during fifty weeks. Since sixty-five per centum of plaintiff's weekly wage is $13, one-half of this amount for the fifty per cent. loss of function of his thumb is $6.50 which he is entitled to receive for a period of fifty weeks. *Page 642 
[7] We find one other error in the judgment below which must be corrected. Plaintiff is not entitled to receive compensation for specific disability, such as the loss of a member or partial loss of function thereof, and, in addition thereto, compensation for temporary total disability. He is entitled to recover one or the other, whichever is greater. Clause 18 of subdivision (d) of subsection 1 of section 8 of the Employers' Liability Act, as amended by Act No. 242 of 1928, p. 358, provides: "Where compensation has been paid under subdivisions (a), (b) or (c) of this schedule, the amount of such payment shall be deducted from any compensation allowed under subdivision (d) or sub-section 2 of the Section."
Subsection (a), referred to in the above quotation, provides for compensation for injury producing temporary total disability and, therefore, plaintiff cannot obtain compensation for specific loss of a member or loss of function of a member under subdivision (d) and also recover compensation for the time he was temporarily totally disabled. Of course, it might be argued that the above quoted clause 18 has application only to cases where the employer has paid compensation under sub-divisions (a), (b), or (c) of the schedule and that, in the instant case, since the defendants have failed to pay compensation, the clause is without application. Such an argument, we think, would not be tenable for the reason that the intent of the Legislature is clearly expressed to the effect that compensation claimed under subdivision (d) cannot be cumulated with other claims for compensation for the same injury. In others words, any award for temporary disability, or total or partial disability, bars a claim for specific disability arising out of the same accident or vice versa. Should we interpret the intention of the Legislature in any other light, it would preclude an employer, contending that the injury was not compensable, from invoking the provisions of clause 18 in his favor because of his failure to pay the compensaton recoverable for temporary total disability.
Furthermore, we find that our Supreme Court has squarely decided this very question in the case of McGruder v. Service Drayage Co., 183 La. 75, 162 So. 806. In that case, plaintiff sustained an injury to his left hand which resulted in the amputation of his index finger. Thereafter, he brought suit alleging that he was entitled to recover compensation for thirty weeks for the loss of the index finger and, in addition thereto, compensation for fifty-one weeks during which time he was totally disabled to perform work of a reasonable character as a result of the accident. The judge of the lower court allowed him full recovery and, on appeal here, we reduced the judgment for compensation from eighty-one weeks to thirty weeks. The Supreme Court granted writs of review and permitted plaintiff to recover for fifty-one weeks but refused his claim for the additional thirty weeks stating that, since he was actually totally disabled for a period of fifty-one weeks, he was entitled to recover compensation for that period of disability but that he was not entitled to a judgment for thirty weeks in addition thereto for the loss of his finger. There, it appeared that the compensation payable for the employee's temporary total disability was greater than that payable for the specific disability and the court permitted recovery of the larger amount. In this case, the reverse is apparent. Plaintiff's claim for total temporary disability is for a period of only six weeks, whereas, the specific compensation payable to him for the partial loss of function of his thumb is far in excess in amount. Hence, plaintiff is entitled to the larger amount but not to receive both.
Counsel for plaintiff cited, in oral argument, our decision in Falgoust v. Maryland Casualty Company, supra, as authority for the proposition that plaintiff can recover for specific disability and, in addition, for temporary total disability. The Falgoust case does not sustain this contention. The point made by the defendant in that matter was that it was entitled to deduct from the amount of compensation payable for partial loss of use of function of an arm the amount of wages earned by plaintiff for the period after the accident during which he worked for his employers. We found otherwise, holding that defendant's liability for specific disability was not in anywise dependent upon the employee's ability to work and that, therefore, the wage which he earned subsequent to the accident could not be offset as compensation paid on account. In fact, in our decree in that matter, we deducted the sum of $120 which had been previously paid by the employers to the plaintiff as compensation for temporary total disability. *Page 643 
[8] In view of the foregoing, the judgment appealed from will be recast and amended so as to disallow compensation to plaintiff for the six week period of temporary total disability. However, this amendment is of such a trivial nature that we shall not burden the plaintiff with costs of this appeal.
For the reasons assigned, the judgment appealed from is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, William Storm, and against defendants, William F. Johnson and Arden Fairchild, for workman's compensation in the sum of Six 50/100 ($6.50) Dollars per week for a period of fifty weeks beginning November 21, 1944, with five (5%) per cent. interest on all overdue payments and for all costs.
Amended and affirmed.