141 So.2d 48 (1962)
Robert ANDERSON, Plaintiff-Appellee,
v.
CONTINENTAL CAN COMPANY, Inc., et al., Defendants-Appellants.
No. 9713.
Court of Appeal of Louisiana, Second Circuit.
April 24, 1962.
Rehearing Denied May 22, 1962.
Certiorari Denied June 20, 1962.
*49 Holloway & Baker, Jonesboro, for appellants.
F. Jean Pharis, Alexandria, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
Plaintiff instituted this suit for total and permanent disability under the Workmen's Compensation Act as a result of having received serious burns to his body while employed as a pulpwood truck driver. By means of the original and supplemental pleadings, plaintiff alleged he was entitled to 400 weeks compensation for total and permanent disability and in the alternative, he demanded 300 weeks compensation for permanent partial disability. He also prayed for the statutory penalties and attorney's fees for defendants' arbitrary refusal to pay compensation. After the usual preliminary pleadings, defendants filed an answer in the form of a general denial, together with the alternative defenses that the disability, if any, should be classified as permanent partial, together with the second alternative defense that any recovery should not exceed a maximum of 20% of the loss of his left arm which would entitle him to the maximum of 200 weeks at the rate of $10 per week, less the compensation previously paid. The lower court rendered judgment in favor of plaintiff for total and permanent disability, less 57 weekly benefits previously paid, but rejected his demands for penalties. From this judgment, defendant has appealed, and plaintiff has neither appealed nor timely filed an answer to the appeal, which eliminates the necessity of discussing whether the employee is entitled to any penalties for the employer's refusal to pay the compensation adjudicated to him, and limits the question before us to whether plaintiff is entitled to any workmen's compensation, and if so, the amount due.
From our review of the record, we find the facts largely undisputed which we will briefly set forth. Plaintiff was employed by a company, which was later merged with defendant company, as a pulpwood truck driver, and had been so employed for five and one-half days previous to the day of the injury, which was September 16, 1956. On this date, while in the course and scope of his employment, and while working on *50 the motor of his truck, he received very serious burns in the vicinity of his left shoulder, arm and head. As a result of his injuries, he was hospitalized for 37 days, and his treatment consisted principally of multiple skin grafts over the burned area. He was treated by several doctors for an extended period of time, and was unable to resume any employment for 57 weeks following the accident, at the expiration of which time he was released by his physician to resume his work with his former employer. Upon reporting to defendant-employer following the accident, plaintiff was not assigned duties as a truck driver, but went to work with the extra board at defendant's paper mill. He continued to perform duties with the extra board for approximately three months. While there is some dispute as to the wages earned by him during this time, as well as the exact duties performed by him, it can be generally said that such wages were fully earned and his duties consisted of general maintenance work. These duties included manual work and also the operation of what is commonly referred to as a "Georgia Buggy". This buggy was a two-wheel device which was manually pushed in order to transport various articles around the mill premises.
After plaintiff had worked for defendant on the extra board, as aforesaid, for a period of three months, he quit and was employed by the Holsum Bread Company as a truck driver. He followed this work for about ten months and his duties consisted of operating a bread truck as well as loading and unloading same, and delivering rather large boxes of bread principally to the colleges of Louisiana Tech and Grambling. This truck was slightly smaller than the pulpwood truck previously operated by the injured employee.
After terminating his employment with Holsum Bread Company, he immediately went to work with a dairy as a truck driver and route man and performed such duties for about five months. While doing this work, it was also necessary for him to drive a truck comparable in size to the bread truck as well as load and unload same with rather large and heavy cases of milk.
Plaintiff contends the duties performed by him subsequent to his injuries were different in nature and character from those being performed at the time of his injuries, and it is, therefore, necessary to make a more detailed study of the exact duties being performed by him as a pulpwood truck driver. The record shows the truck which he was operating at the time had a minimum capacity of two tons; that he drove same generally on good roads to various locations within the area where pulpwood had been stacked for delivery to defendant's paper mill. The only thing required of the plaintiff in addition to driving the truck was aiding in its loading. In order to load the truck, same was equipped with a winch and cable which was operated by means of a power take-off with the controls being located inside the cab of the truck. However, in order to properly secure the pulpwood with this cable, it was sometimes necessary for the driver to get out of the truck and aid in lowering the cable and securing same around the pulpwood.
The medical evidence consisted of the testimony of Drs. Alfons Altenberg, an orthopedic specialist of Monroe, Louisiana; O. B. Owens, a general practitioner of Alexandria, Louisiana; Ragan Green, a radiologist of Ruston, Louisiana; Harold Harvey Harms, general practitioner of Ruston, Louisiana; Lamoyne C. Bleich, surgeon of Ruston, Louisiana; and A. E. McKeithen, a general practitioner of Jonesboro, Louisiana.
Without outlining in detail the treatment and findings of each of the above physicians, it can be generally stated that there was no serious conflict in their conclusions as same related to the physical condition or injuries of plaintiff. All the doctors concluded plaintiff had reached his maximum recovery at the time defendant ceased paying him compensation; and because of the *51 serious burns and skin grafts, he had some limitation in the abduction of his left arm. He apparently had the full use of this arm and could freely move and rotate same except that he could not fully extend it in an upright position, but to the contrary, there was approximately a 15% limitation of the full extension thereof. As a result of this limitation of motion in his arm, the medical testimony was more or less uniform, with the exception of Dr. Owens, that plaintiff could perform all the duties of a pulpwood truck driver without pain with the possible exception of extending this arm fully above his head in order to exert any pressure on the cable and winch while loading the pulpwood. However, the same doctors estimated he had a 10% permanent loss of the use of his left arm, and an estimated 5% disability to his body as a whole. Dr. Owens did not differ with the other medical experts as to the physical condition of plaintiff, but did conclude he was totally and permanently disabled to perform all the duties of a pulpwood truck driver because of the restricted use of his left arm.
The trial judge concluded the employee was totally and permanently disabled because of his injuries. His decision was predicated upon his belief that the duties of a pulpwood truck driver were much more strenuous and called for more dexterity than those performed by the plaintiff following the accident. Therefore, we have a mixed question of law and fact before us on this appeal.
There are certain undisputed principles of law which are pertinent to the issues now before us. The jurisprudence is clear that unless the employee is physically able to resume the type of work he was doing at the time of the injuries, he is disabled within the contemplation of the Workmen's Compensation Act. It does not suffice that he is able to resume an entirely different type of work even though in such employment he might earn greater wages. Glidden v. Alexandria Concrete Co. (La. App. 2 Cir., 1961) 132 So.2d 514; McAlister v. Liberty Mutual Ins. Co. (Orl.App. 1956) 87 So.2d 354, writs denied, and cases cited therein.
It is also well settled that an injured employee is not required or expected to resume his work if same can only be done in great pain or suffering; and that if such work can only be performed under such condition of pain, he is likewise disabled within the contemplation of the Workmen's Compensation Act. Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, (1953) and cases therein cited.
Where the employee was engaged in work at the time of his injury which consisted of multiple duties, the question of whether the injuries resulted in total and permanent disability must be decided by determining whether he can return to work and perform substantially all of such duties. If there are some duties incidental to his employment that he is unable to perform, the court then must decide whether such duties were a substantial part of his employment. Hibbard v. Blane (La.App. 2 Cir., 1938) 183 So. 39; Anderson v. May (La.App. 1 Cir., 1940) 195 So. 783; Washington v. Holmes & Barnes, Ltd. (La.App. 1 Cir., 1941) 4 So.2d 51; Gray v. Bird & Son, Inc. (La.App. 2 Cir., 1943) 12 So.2d 828; Barentine v. W. R. Aldrich & Co. (La.App. 1 Cir., 1945) 20 So.2d 635; Vilce v. Travelers Ins. Co. (La.App. 1 Cir., 1946) 24 So.2d 485; Breland v. Rainold-Van Denburgh, Inc. (Orl.App.1946) 24 So.2d 882; Boulanger v. Liberty Mutual Ins. Co. (La. App. 2 Cir., 1947) 31 So.2d 888; Spillman v. L. O. Stocker Co. (La.App. 1 Cir., 1949) 42 So.2d 136; Fontenot v. Goldenstern Pipe & Supply Co. (La.App. 1 Cir., 1951) 50 So.2d 484; Scott v. Fulton Bag & Cotton Mills (Orl.App. 1953) 65 So.2d 397; Ernest v. Martin Timber Co. (La.App. 2 Cir., 1960) 124 So.2d 205.
As the above rules apply to the facts of this case, we have no hesitancy in concluding this injured employee is fully *52 able to return to his former employment as a pulpwood truck driver and can perform all the duties incidental to such occupation with the possible exception of some of the maneuvers sometimes executed by him while lowering the cable from the winch in order to load the pulpwood. Therefore, the crucial question for us to decide is whether this limited duty was an incidental or a substantial part of his employment. Our review of the entire record convinces us such duties were not substantial. In fact, plaintiff testified his main duties as a pulpwood truck driver were to operate the truck. He further admitted that the cable could be hooked onto the pulpwood without him being required to raise his left arm. As he could perform all the other duties of his employment as effectively as before without any appreciable pain, we conclude he was not disabled to perform all the substantial ingredients of his former employment. Our conclusion on this point is fortified by the plaintiff having actually driven similar trucks for two employers over an extended period of time following the accident.
LSA-R.S. 23:1221(4) (p) provides:
"In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."
Under the above provision, if an injured employee can return to his former employment and is able to perform all the substantial duties incidental thereto, but has lost either the total use of a physical function, or a percentage thereof, he is entitled to an award thereunder.
As the medical evidence is undisputed that this employee has a 10% loss of the use of his entire left arm caused by this injury, it is necessary for us to compute the amount due him under the statute set forth above.
Plaintiff's average weekly earnings at the time of the accident were $55 per week, and his resulting disability was temporary, but total, for a period of 57 weeks for which time he was paid compensation at the rate of $35 per week, or a total of $1995. He has sustained a 10% loss of the use of the function of his left arm and, therefore, the weekly amount of compensation payable for this injury must be computed under the provisions of the statute relating to a specific loss. The correct method of computing compensation for the permanent partial loss of the use of the function of a member is to take the proportion of the partial loss from 65% of the weekly wages and allow such amount as compensation for the number of weeks permitted for the total loss of the respective member. O'Connor v. American Mutual Liability Ins. Co. (Orl.App.1956) 87 So.2d 16; Morgan v. Standard Accident Ins. Co. (La.App. 1 Cir., 1951) 51 So.2d 107; Storm v. Johnson (Orl.App.1943) 23 So.2d 639; Smith v. Turner Lumber Co. (La.App. 1 Cir., 1937) 174 So. 699. The result is that the compensation rate is 10% of 65% of $55, or $3.58 per week for 200 weeks, but as LSA-R.S. 23:1202 establishes the lowest minimum rate of compensation at $10 per week, plaintiff is entitled to said minimum sum each week for a period of 200 weeks.
An injured employee cannot recover compensation both for specific loss, such as a partial loss of the function of his arm, and for temporary total disability inasmuch as LSA-R.S. 23:1223 provides:
"Where compensation has been paid under subdivisions (1), (2), or (3), of R.S. 23:1221, the amount of such payment shall be deducted from any compensation allowed under subdivision *53 (4) thereof or under Sub-part C of this Part."
Considering now the question of the amount of credit due the defendant for the 57 weekly compensation payments previously made, the established jurisprudence of this State is that any compensation that has been paid for temporary total disability prior to the allowance for a specific loss must be deducted on a dollar for dollar basis rather than a week for week basis. McGruder v. Service Drayage Co., Inc., 183 La. 75, 162 So. 806 (1935); Miller v. General Chemical Division (La.App. 1 Cir., 1961) 128 So.2d 39; Henry v. Ware Cotton Batting Plant, etc., (Orl.App.1960) 117 So.2d 270; Francois v. Circle Drilling Co. (La.App. 1 Cir., 1959) 112 So.2d 771; Flanagan v. Welch (Orl.App.1956) 93 So. 2d 36; Jackson v. Steel Fabricators, Inc., (Orl.App.1956) 90 So.2d 397; O'Connor v. American Mutual Liability Ins. Co., supra; Storm v. Johnson, supra.
For the reasons assigned, the judgment of the lower court is hereby amended and recast so as to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Robert Anderson, and against the defendant, Continental Can Company, Inc., and Liberty Mutual Insurance Company, in solido in the amount of $10 per week beginning September 16, 1956, and continuing for a period of 200 weeks, less the amount of $1995 previously paid by the defendants with legal interest on all past due payments from the date due until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff and against defendants in the amount of $150 for expenses incurred for travel and incidental expenses in connection with his medical treatment with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Continental Can Company, Inc., and Liberty Mutual Insurance Company pay all cost of these proceedings, including the sum of $50 for each medical expert witness who testified in this case with the exception of Dr. Alfons R. Altenberg, which should be fixed at $75.
Amended and affirmed.
HARDY, Judge (concurring).
It is with extreme reluctance that I concur in the above and foregoing opinion. My concurrence is necessitated by an appreciation of the correctness of both the law and the facts as set forth in the opinion; my reluctance arises from the fact that I regard the inescapable conclusion as a classic example of a gross injustice to the injured employee which results from the provision of our Compensation Statute referred to as LSA-R.S. 23:1223 and quoted in the body of the opinion, supra. I am convinced that the obvious injustice and inequitable effect of this statutory provision should address itself to the attention of the Legislature for correction.
Using the instant case as an example, we are confronted with the fact that the plaintiff-employee was totally disabled for a period of fifty-seven weeks and thereafter was permanently afflicted with a percentage loss of the use of an entire arm. Nevertheless, because of the express statutory provision and the jurisprudence responsive thereto, the monetary award for the loss of use or function of a member of the body is subjected to a credit of amounts paid during the period of total disability, and the practical effect of the judgment entitles him to a net award of the munificent sum of $5.00. I am strongly of the opinion that a judgment for loss of use of a member of the body should not be subjected to a credit of payments made during a period of total disability.