PICKETT, Judge.
This is a workmen’s compensation suit instituted by Alex Ben, Jr., against his employer, Starns-McConnell Lumber Company, Inc., and its compensation insurer, Consolidated Underwriters, in which he alleges that he is totally and permanently disabled as the result of an injury to his right hand. Plaintiff has been paid compensation benefits at the rate of $35.00 per week for a period of 20 weeks. Thereafter, he was paid $10.00 per week until the total amount of $1,500.00 was paid, for the loss of two joints of the ring finger and almost two joints of the long finger. The defendants deny that plaintiff is totally and permanently disabled or that he is entitled to any other benefits. After a trial on the merits, judgment was rendered by the trial court in favor of the plaintiff for compensation at the rate of $10.00 per week for a period of 300 weeks, subject to a credit on a week to week basis rather than on a dollar basis for each week that he had been paid compensation from the date of the accident in accordance with the provisions of R.S. 23 :- 1221(3). The defendants have appealed.
Counsel for the defendants contend the trial court was in error in granting judgment to the plaintiff under the provisions of LSA-R.S. 23:1221(3). The defendants argue the court should apply LSA-R.S. 23:1221(4) (c) and (k). In the alternative, the defendants contend that if the court refers plaintiff’s injury to his hand that the applicable law is LSA-R.S. 23:1221(4)(e) and (o). The plaintiff did not answer the appeal. Therefore, the issue before the court is whether the plaintiff is entitled to recover from the defendants for a compensable injury under the provisions of LSA-R.S. 23:1221(3) or under LSA-R.S. 23:1221(4).
The evidence is undisputed that plaintiff was employed by the Starns-McConnell Lumber Company, Inc., on February 14, 1968, and prior thereto as a sawmill laborer and while engaged in his employment duties was injured when his hand was caught between two sprockets and a roll-away device used to convey lumber. Immediately after the accident, the plaintiff was carried to the Seventh Ward Hospital, where he was treated by Dr. E. E. Faulk-enberry, who continued to treat him until March 30,1968.
Dr. Faulkenberry testified by deposition. He said the plaintiff reported to him Feb *79 ruary 14, 1968, with his ring finger and middle finger of his right hand dangling. He found it necessary to amputate portions of both fingers. The ring finger was amputated through the proximal interphalan-geal joint; and the middle, or long finger, was amputated just distal to the interphal-angeal joint. Dr. Faulkenberry said the defendant tolerated the procedure well, and that he had an uneventful recovery. He discharged him March 30, 1968, as being able to return to the type work he was doing at the time of his injury, which was a sawmill laborer. However, he said the plaintiff had some permanent disability; but he did not state the degree of permanent disability. He saw plaintiff the day before his deposition was taken. He found no appreciable change in the plaintiff’s condition.
The plaintiff was examined, also, by Dr. J. Willard Dowell and Dr. Daniel S. Sinclair, orthopedic surgeons. The evidence of Dr. J. Willard Dowell was taken by deposition July 3, 1969. He said he examined the plaintiff on two different occasions. The first examination was on May 23, 1968, and the second examination was on March 21, 1969. His examination disclosed that the scar of the ring finger was well healed. He also found the scar of the middle finger was well healed although it was slightly tender. He found some roughness of the nail growing in over the little finger. He did not detect any disability of the thumb or index finger. He estimated the disability in the ring finger at approximately seventy percent; the middle finger at sixty percent; and the little finger at ten per cent. He estimated the overall disability in plaintiff’s right hand at twenty per cent. He felt the disability of plaintiff’s little finger would improve, but that of course the amputations were pernament. Dr. Dowell’s examination on March 20, 1969, revealed little change. The scars of the amputated fingers appeared to be well healed and did not seem tender. There was noted very little roughness of the nail of the little finger, but there was some slight limitation of flexion in the finger.
Dr. Daniel S. Sinclair examined the plaintiff on July 30, 1968. He found the scars of the tips of the amputations of his fingers seemed to be well healed, however, he found marked tenderness present over the medial aspects of the tip of the long finger. He found limitation of motion in the small finger. He, also, found mild osteoporosis or atrophy of the bones of the right hand which he attributed to disuse of the hand. He expressed the opinion that plaintiff had a thirty-nine per cent physical impairment of his right hand which would constitute about thirty-five per cent impairment of the plaintiff’s right arm.
It is obvious from the testimony that the plaintiff is an unskilled laborer of limited ability, who has done farm work and common labor around industrial establishments all of his adult life. His testimony reflects that he suffers intermittent pain in the scars of the tips of the amputations of his fingers. He denies that he is able to do sawmill work because, in using his right hand, the nubs of his amputated fingers cause him pain. He said he does not have much grip in his injured hand. He cannot make a fist because the nubs of his amputated fingers are in the way. He, also, said he was unable to do the kind of work he was doing before the accident, because the nubs of his amputated fingers get in the way. He is right handed. He said when he was working for defendant, Starns-McConnell, he was “catching green lumber from the off-band saw.” He had to catch the lumber with his right hand and throw it over the edge. Because of the injuries to his right hand, he says he cannot grasp the lumber and manipulate it as he did before his injury.
The evidence conclusively shows that the plaintiff has lost the use of two fingers and, to some extent, the use of his little finger. Hence, for all practical purposes, he has the use only of his thumb and index finger of his right hand. He has suffered the loss, to some degree at least, of the *80 power of grip and, it necessarily follows, some limitation of the use of his hand. The undisputed medical evidence shows that he has an impairment of at least twenty per centum of his right hand. Dr. Sinclair placed the impairment to plaintiff’s hand at thirty-nine per centum. He, also, found mild osteoporosis or atrophy of the bones of his hand, which he attributed to limited use of his hand. From a careful examination of the evidence, we conclude the plaintiff, as a result of his injury has lost not only substantial portions of two of his fingers and an impairment of the little finger of his right hand, but that these specific losses have resulted in a partial impairment of his ability to perform the work that he was engaged in at the time of his injury. The plaintiff has been able to mow yards, move dirt with a wheelbarrow, and perform some types of farm work since he was injured. The lower court concluded from the testimony that the plaintiff was entitled to recover under the provisions of LSA-R.S. 23:1221(3) which provides for the payment of compensation as follows:
“For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not beyond three hundred weeks.”
The trial judge has not favored us with written reasons for judgment, but we infer from his judgment that he concluded that plaintiff had not only suffered the specific loss of portions of two fingers and some impairment of the use of the little finger on his right hand as enumerated in LSA-R.S. 23:1221(4), but that the losses had caused partial permanent disability to do the kind of work that he was doing at the time of his injury. The district judge had the opportunity of hearing the plaintiff testify, and of observing the appearance of his hand and the nature of his injuries and evaluating his credibility. After a careful examination of the record in this case, we are of the opinion that the findings of the trial court are not manifestly erroneous.
Where a claimant suffers partial permanent disability and the loss or impairment of the use of a bodily member, he is entitled to recover either for the disability or the loss of the bodily member, which ever would produce the greater amount. In Jackson v. Steel Fabricators, Inc., La.App., 90 So.2d 397, the court said:
“We think it well settled that in computing compensation, where there is disability, either total or partial and there is also the loss or the impairment of the use of a member of the body, the plaintiff is entitled to recover either for the impairment of the use of a member of the body or for the disability, whichever would produce the greater amount. There cannot be recovery for both.”
The Court of Appeal, Second Circuit cited Jackson v. Steel Fabricators, Inc., supra, with approval in Tyler v. Great American Indemnity Company, 116 So.2d 717, and said:
“We regard our jurisprudence as being firmly established on the point that in cases where a claimant suffers disability, either total or partial, and the loss or impairment of a bodily member, he may recover either for the disability or the loss of the bodily member affected, whichever would produce the greater amount; Jackson v. Steel Fabricators, Inc., La. App., 90 So.2d 397 (writs denied).”
Under the provisions of LSA-R.S. 23:1221(3), plaintiff is entitled to be paid compensation for sixty-five per centum of the difference between wages at the time of his injuries and wages which he has been able to earn thereafter for three hundred weeks. At the time of his injury, plaintiff was earning wages such that sixty-five per centum thereof would entitle him to $35.00 per week compensation for total disability. The record does not show how *81 much plaintiff earned thereafter. The evidence shows that he has worked on a number of menial jobs since his injury; but there is no proof of what his wages have been. Therefore, applying the provisions of LSA-R.S. 23:1221(3) the compensation due plaintiff would necessarily be the minimum set forth in LSA-R.S. 23:1202. At the rate of $10.00 per week for three hundred weeks, claimant would be entitled to $3,000.00. But for the loss of his bodily members under the provisions of LSA-R.S. 23:1221(3), the plaintiff would receive a lesser amount. Consequently, the plaintiff is entitled to the statutory minimum of $10.00 per week from February 14, 1968, for the duration of his disability, not to exceed three hundred weeks, subject to proper credits. The plaintiff is not entitled to be paid for both specific loss and for partial permanent disability.
For the reasons assigned, the judgment appealed from is amended to grant unto the plaintiff compensation at the rate of $10.00 per week from February 14, 1968, for the duration of his partial disability, not to exceed 300 weeks, with legal interest thereon from the due date of each weekly payment until paid, subject to a credit for any amounts previously paid to plaintiff as compensation, and, as amended, the judgment is affirmed.
Amended and affirmed.