**Lena GUIDRY**

v.

**NEW AMSTERDAM CASUALTY COMPANY.**

**Civ. A. No. 4511.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 13, 1956.

Rittenberg, Weinstein & Bronfin, Robert Weinstein and Henry Yoder, New Orleans, La., for plaintiff.

Henriques & Mayo, Harry M. Mayo, Jr., Stanley E. Loeb, New Orleans, La., for defendant.

CHRISTENBERRY, Chief Judge.

This is a proceeding under the Louisiana Workmen's Compensation Statute.[1]

The plaintiff, Lena Guidry, alleged in her complaint that she was regularly employed by the Eye, Ear, Nose and Throat Hospital in New Orleans as a nurse's aide, and while so employed sustained in-

---

1. LSA–R.S. 23:1021 et seq., as amended.

juries to her right arm in two accidents: the first when she slipped on a wet floor in the utility room of the hospital, and the second while she was assisting a patient who was recovering from anaesthetics administered during surgery, referred to in the testimony as reacting a patient, both injuries resulting in permanent and total disability. She further alleged that her work as a nurse's aide required her to react, move, bathe and lift patients, and that this was in the regular business of the employer. During the trial of the matter, evidence was adduced in an attempt to establish the hazardous nature of her work; that she was regularly required to be in proximity to oxygen and explosive anaesthetics; that she was required to operate a dumbwaiter, and that she was required to be around electrical machinery in the kitchen of the hospital, all as a part of her duties and the regular business of the hospital.

The business of operating a hospital is not found among those businesses designated as hazardous in the Workmen's Compensation Statute.

Nor does it appear that it has been so determined by agreement between the employee and employer in this case, or by prior submission and decision of any Court.

In applying the provisions of the statute to cases where employees are injured in performing services in a business not specifically designated as hazardous, the inquiry is always whether or not the duties of the injured employee required him to perform services of a hazardous nature incidental to his employment and directly associated with his employer's business. Brownfield v. Southern Amusement Co., Inc., 1940, 196 La. 73, 198 So. 656; Hammer v. Lazarone, La.App. 2 Cir., 1956, 87 So.2d 765. Where an employee performs services in both the hazardous and non-hazardous features of his employer's business and is injured while performing services in the latter category, he is entitled to compensation, provided the employee's connec-

tion with the hazardous features of the employer's business is a major or material portion of his duties, and not merely occasional. Byas v. Hotel Bentley, Inc., 1925, 157 La. 1030, 103 So. 303; Brownfield v. Southern Amusement Co., Inc., supra.

The first feature of the employee's services which it is contended by the plaintiff rendered a major or material portion of her occupation "hazardous" was her proximity to oxygen and explosive anaesthetics.

It is virtually undisputed that all seven of the operating rooms of the hospital are located on the third floor, the same floor as the employee's duty area. Generally the building consists of an original structure and a recent addition of about the same size and area. The main hallway of the third floor of the original structure connects with the main hallway of the addition, and separating the old and new structures is a firewall. A double set of swinging doors is situated in this hallway where the firewall runs through the building. The original half of the third floor was used as a general ward for patients. The new half of that floor has seven operating rooms adjoining the main hallway, and each operating room is entered by a double set of swinging doors. In addition, there is another double set of swinging doors in the main hallway separating the area of the operating rooms from the remainder of that floor. Mrs. Guidry worked generally among the patients in the ward area under the supervision of a nurse in charge of the ward whose desk was in that area. A dumbwaiter and passenger elevator were located in the main hallway between the firewall and the doors entering into the operating area. In the operating rooms were used anaesthetics, particularly, cyclo propane, ether, nitrous oxide and ethylene, some of which are explosive. Oxygen, an explosive, was also used in the hospital.

The plaintiff testified that she was required occasionally to go into the hallway on which the operating rooms open in

order to bring certain supplies assigned to the patient during surgery, and in an emergency she assisted in bringing the patient into the operating room a few times. There was no testimony that she went into the operating rooms during surgery, but she states that she was sometimes required to wait there as long as 15 minutes in order to give the instruments to the proper person or to receive them. She testified that at all times when she was in the operating hallway the doors of the operating rooms were open, and further that if she was wearing a nylon uniform at the time she would change to a cotton uniform in compliance with a hospital safety regulation designed to prevent sparks in the operating rooms. According to her she never wore a face mask.

On the other hand, the Chief Nurse of the hospital testified that the plaintiff had no duties in the operating room during surgery, although she may have been sent on an errand, in which case she would not have entered the operating room. In addition, she stated that the doors of the operating rooms were closed during surgery. The nurse in charge of the third floor ward, supervisor of the plaintiff, testified that the duties of a nurse's aide only required the plaintiff to go into the operating hallway about once a week, and never into the operating rooms. She remembered the plaintiff wearing only cotton uniforms, and not nylon.

■ Although the evidence showed that there were explosive gases stored and used in the operating rooms, it did not show the quantity of such gases, and the seriousness of any explosion which could have occurred. The evidence failed to show the storage or use of "dangerous quantities" of these gases as the term is used in the compensation statute.

■ Assuming, however, that there were dangerous quantities of explosive gases, the plaintiff's occasional presence in the hallway of the operating area and the occasional presence of oxygen in the ward area was not such as would place her "in the regular proximity" of the gases.

Plaintiff cites the cases of Smith v. Marine Oil Co., Orleans, 1929, 10 La.App. 674, 121 So. 782 and Rigsby v. John W. Clark Lumber Co., La.App. 1 Cir., 1946, 28 So. 346 in support of her view that this feature of her employment was hazardous, however, the facts of those cases, wherein the claimants were regular employees of or operated gasoline filling stations and were almost constantly in the course of their employment within a few feet of the gasoline storage tanks, are clearly distinguishable.

The evidence concerning the dumbwaiter showed that it was electrically driven and was put in motion in the proper direction by pressing buttons located on a panel next to the door on each floor. It was approximately 8 cubic feet in size. The device could not be operated unless the door to it was completely closed. It was used to send clean laundry to the operating room on the third floor, and other supplies to each floor. The plaintiff testified that she used the dumbwaiter about four or five times each day, usually when she had to quickly obtain some supplies from the second floor.

The Workmen's Compensation Act, LSA–R.S. 23:1035, designates "the operation * * * of * * * freight and passenger elevators" as a hazardous business. Furthermore, "for the purpose of construing what it (a dumbwaiter) is in a compensation suit * * * it is a 'freight elevator' and an employee whose duties require him to operate it *might well* come under those provisions of the statute relating to freight elevators." (Emphasis supplied.) This language was used by the First Circuit Court of Appeals in Scott v. Dalton Co., La.App. 1941, 1 So.2d 412, 414, when it was considering the hazardous nature of an employee's duties and its decision was based on the pleadings, without the benefit of evidence. The Court returned the case to the District Court to hear the evidence, and there is no later indication of what resulted there or on further appeal.

It is important to note that the articles mentioned as being carried by the dumbwaiter in that case are considerably larger and more like freight, than the linen and small articles which were transported by the dumbwaiter in the hospital.

In the circumstances of this case, a Louisiana Court would not find that this activity of the plaintiff was hazardous in the meaning of the Workmen's Compensation Act, assuming that the plaintiff used the dumbwaiter as often as she said she did. This is especially true because of the fact that all that was required of the plaintiff was to occasionally press certain buttons on a wall panel and take out the small supplies she had requested.

The teaching of the reported cases in Louisiana dealing with the hazardous nature of an employee's duties which require him to come in contact with or operate electrical and mechanical kitchen devices is that in order to recover the plaintiff must show that the devices are hazardous and that he used or came in close contact with the equipment, rather than merely being present in the kitchen where the equipment is located and installed. See Atkins v. Holsum Cafeteria, La.App. Orleans 1935, 159 So. 758; Stephens for Use and Benefit of Stephens v. Catalano, La.App. Orleans 1942, 7 So. 2d 38; Scott v. Dalton Co., La.App. 1 Cir., 1941, 1 So.2d 412; Brown v. Toler, La.App. 1 Cir., 1944, 19 So.2d 680; Storm v. Johnson, La.App.1945, 23 So.2d 639; and Hammer v. Lazarone, La.App. 2 Cir., 1956, 87 So.2d 765.

Cake slicers, food mixers, dishwashers and ventilating fans were installed and in use in the kitchen of the hospital, located in the basement. As the Court said in Atkins v. Holsum Cafeteria, supra [159 So. 760], where compensation was refused because the business was not hazardous, "They were * * * no more hazardous than the devices used today in the modern up-to-date home." The evidence failed to show that the plaintiff came in any closer contact with these devices than occasionally walking into the kitchen to obtain food for patients, which food was presumably prepared by hired cooks and kitchen servants. The plaintiff's employment is not hazardous by reason of her connection with these devices.

The reacting, bathing, moving and lifting of patients is no more hazardous than the average housewife's daily duties with respect to her children and her home. As a part of the duties of a nurse's aide, the plaintiff was required at times to watch patients recovering from anaesthetics administered during surgery, and because of the delicate nature of eye operations she was required to prevent patients under those circumstances from moving about in their beds, as they recovered consciousness. This was always done under the supervision of a trained nurse, and for those patients who had been heavily sedated or were senile there were provided sideboards for the beds and "Posey Straps" for holding the patient's arms down so that the patient would not fall out of bed. These sideboards and straps were placed in position by the orderlies employed by the hospital. Near the end of the period of recovery, the patient's clothing was sometimes changed by the nurse's aide. Each morning, the nurse's aide was required to change the linen on about six beds and to bathe parts of the bodies of about that number of patients. In addition, she sometimes assisted in lifting patients.

This feature of the employee's duties cannot conceivably be considered as included within any of the classifications of hazardous businesses designated by the statute.

Finding, therefore, that the plaintiff has failed to prove that her duties as a nurse's aide required her to devote a material or major portion of her services in connection with any hazardous feature of her employer's business, judgment must be for the defendant.