In this court appellee has filed a motion to dismiss the appeal for the reason the appeal bond was executed four days before judgment was signed and filed. The judgment on its face says that it was read and signed on December 5, 1942. The minutes of the Court and the filing of the judgment show it was signed and filed on December 9, 1942. The appeal bond is dated December 5, 1942, and was filed December 9, 1942.
At the same time appellee filed his motion to dismiss the appeal, he filed an answer to the appeal praying that the judgment of the lower court be amended by increasing the award to a period of not more than 400 weeks at 65% of his weekly wages. There was no reservation of his rights under the motion to dismiss and the answer was not filed in the alternative, if the motion to dismiss was not sustained. We are therefore of the opinion that by filing the answer to the appeal asking for an increase in the judgment, appellee has waived all rights if any he had under the motion to dismiss. *Page 829 
There is another sound reason why the motion to dismiss is not good and that is that it was filed here more than three days after the filing of the transcript. Power v. Christina, 7 La.App. 651; In re Lindner, 113 La. 772, 37 So. 720; Powell Motor Company v. A. Christina Bros., 8 La.App. 174; Stovall v. Thomas Lumber Company, La.App., 189 So. 379; Scheen v. Hain, 141 La. 606, 75 So. 427.
Since both of the above stated reasons for overruling the motion to dismiss are sound, it is unnecessary to discuss the application of Act 112 of 1916, as amended by Act 284 of 1928 (Articles 1921 to 1930, Dart's Statutes) to the motion to dismiss which, in our opinion, is another reason why the motion is without merit. It is therefore overruled.
 On The Merits.
Plaintiff alleged that on March 30, 1941, while in the course and scope of his employment with Bird Son, Incorporated, he received an accidental injury which has caused him to be totally and permanently disabled for performing work of any reasonable character. He alleged his weekly wage was $22 and that defendant was engaged in a hazardous business. Plaintiff prayed for judgment for 65% of his weekly wage for a period not to exceed 400 weeks and for doctors' and medical bills in the sum of $250. Plaintiff impleaded his employer and its compensation insurer.
Defendants answered admitting the business in which plaintiff was employed was hazardous and that he was earning $22 per week. They admit plaintiff suffered an injury in an accident as alleged by him, but deny the injury has in any way disabled plaintiff from performing his usual work and the work he was performing at the time of the accident.
The lower court awarded plaintiff judgment for $8.80 per week for a period not to exceed 300 weeks, beginning March 22, 1942, with legal interest on each past due installment from the date of maturity and fixing the fees of the expert witnesses at $15 each. From that judgment defendants are prosecuting this appeal.
Plaintiff, who is fifty-nine years of age, began his work with Bird Son, Incorporated in November, 1939. He was employed as a night watchman at an asphalt plant. Other than watching the plant to prevent depredation by trespassers, plaintiff's duties were numerous and consisted of the following:
Punching the clock, which was done by placing a key in it and turning it once; circulating heated asphalt from the superheater to the saturator, which was done by pushing a button to start the pump and reversing the switch, which was done by lever; watching the gauge on the engine which generates power for the plant to see that the water pressure on the engine was not too great and if the engine got too hot, to push a button and start the spray pump; to watch the boiler for the purpose of seeing that it had sufficient water in it and when it was low, to push a button to start the water pump; if the fire was not right, plaintiff was required to turn a lever to adjust it; he was required to look after three asphalt stills to see that the heat was right and to turn a valve to increase or decrease the heat; to watch two superheaters as to heat and to turn a valve to regulate them; to look after two "beehives", which are asphalt tanks, and to regulate the heat by the turning of a valve; and when trucks arrived containing asphalt, the connections were made by the truck drivers and plaintiff pushed a button, which started the pump that pumped the asphalt into the storage tanks, and when it became necessary to change the asphalt from one tank to another, he did that by turning a valve.
Plaintiff worked three nights and was then off three. His work called for long hours, beginning at 5 P.M. and ending at 7 A.M., and his earnings were $22 per week. He continued on this job from November, 1939, until March 30, 1941, on which date, while attempting to crank an engine, it backfired and broke the radius bone in plaintiff's wrist. His hand was turned back against his arm. Plaintiff continued to perform all of his former duties without complaint from anyone until March 22, 1942, or fifty-one weeks after the date of the accident. At that time he decided he wanted a job with shorter hours and went to the Manager of the plant and asked for a recommendation to the Shell Plant, located near Minden, Louisiana, telling the Manager he was seeking a job where the required hours of work were less than his present one. The Manager did not give him the recommendation but immediately discharged him and paid him off. Five days later this suit was filed.
Plaintiff admits he is physically able to hold a job as night watchman but has been *Page 830 
unable to secure such a job, however, but does not show that he applied anywhere other than the Shell Plant. Plaintiff states that he had some time in the past done some carpenter work and that due to the injury to his right hand, he cannot do such work now. He does not state how long a time it has been since he did carpentry work.
It is admitted by all the doctors who testified that plaintiff has some stiffness in his right wrist. One doctor thinks he is disabled from performing work requiring the use of his right hand. Another thinks he has a disability of ten to fifteen percent in his right hand and another is of the opinion he can make use of that hand in the same manner he did before the injury. There is no sound evidence to show that the disability is total or permanent and the record is convincing that plaintiff can pursue his former occupation, but with some difficulty. His work is necessarily made much harder for him, due to the limited disability in his right hand. It is our opinion he is entitled to compensation for partial temporary disability. The disability in plaintiff's right hand does not exceed fifteen percent, which would make his compensation payments less than the minimum of $3 per week.
Defendants contend that since plaintiff can follow the same kind of work he was doing prior to receiving the injury, he is not entitled to any compensation. They cite numerous cases so holding and that rule of law is sound provided the disability caused by the injury does not add difficulties to the same kind of work. Plaintiff has almost the same use of the right hand that he had prior to the injury and the fact that the grip in the right hand is not as strong as in the left is no doubt due to plaintiff's favoring the right hand and not making as much use of it as he has the left.
Plaintiff claims doctors' bills in the sum of $250. The only doctor bill caused by the accident was one for $36 which was paid by defendants. Plaintiff has not contracted any doctors' bills since that time, which has been two full years, and there is no proof that he will ever have any such bill. The only doctor who testified that plaintiff needed any further treatment suggested that the use of an infra red lamp would help the hand. The price of such a lamp is small and plaintiff can make use of it himself the same as in a doctor's office.
It therefore follows that the judgment of the lower court is amended by decreasing the amount of weekly compensation allowed from $8.80 to $3 per week, and, as amended, the judgment of the lower court is affirmed.