Herbert, J.
So far ás it is pertinent to the instant facts, Section 4123.52, Revised Code, provides as follows;
*185 , “The jurisdiction of the Industrial Commission over each case shall be continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified. No such modification or change nor any finding or award in respect of any claim shall be made with respect to disability, compensation, dependency, or benéfits, after ten years from the last payment theretofore made of compensation or benefits awarded on account of injury * *
This court in the earlier ease involving the same parties (159 Ohio St., 554) denied the writ of mandamus sought but in so doing refrained from passing on two certain questions, namely, “Whether the rendering of treatment by a physician employed by a self-insuring employer or the furnishing of the infrared lamp tolls the running of the ten-year statute of limitations.”
The facts recited above are stated in such chronological detail so that it may be indisputably clear that all events having to do with treatments of appellee claimed by her to have been personally administered by a physician or nurse employed by appellant occurred more than ten years before October 27,1955, the stipulated date when the application on which this action is based was filed. The first question not passed upon by the court in the earlier case is therefore no longer in issue. Also, the furnishing of the infrared-ray lamp by appellant to appellee having admittedly occurred in 1941, that event standing by itself is likewise removed from further consideration.
The sole issue which remains is whether the heat treatments applied by the appellee to herself at various times within the ten-year period preceding October 27, 1955, constituted payment of “benefits awarded” and so tolled the running of the statute. Appellee asserts in her amended petition that “sometime prior to that date [July 1944] she was given a special lamp by her employer for treatment purposes and that she still uses said lamp constantly, almost daily, and at the time of the filing of this amended petition, January 22, 1957, plaintiff has used and is being treated by infrared lamp which has been provided by said defendant employer.”
*186 As to the use of this lamp, the appellant’s physician testified:
“Q. Would you tell the jury with reference to time and also the circumstances of furnishing that lamp? A. We use heat lamps the same as people with an electric heating pad or water bottles, it takes care of muscle soreness temporarily and makes them feel a little better after using them. We gave that lamp to Miss Cestone sometime in the spring, early spring of 1940, the war was on in Europe in 1938 and 1939 and 1940 and medical supplies were not easy to get. Ordinarily these lamps are kept in stock by the Lyons Company and other companies, even the ten cent stores sell these infrared lamps over the counter. When we tried to get one from the Lyons Company they didn’t have one but they said they would send one to her as soon as one came in, and that lamp was delivered by the Lyons Company to her home. * * *
Í C * * #
“Q. Do any of your purchase records or any of the records you have been referring to Mr. Fleming show the kind of lamp it was? I mean the make of the lamp, the size of the lamp or anything connected with the lamp? A. It shows the lamp cost $9, I think.
“Q. That is all you know about the lamp? A. $9.88.
“Q. Is the cost? A. Yes, sir.
i C # # *
“Q. Did you ever supervise the giving of any lamp treatments to Miss Cestone at her home? A. No, sir.
‘ ‘ Q. When the lamp was used at her home it was used under her own supervision? A. Yes, sir.
U* * *
“Q. Originally, Doctor, when you prescribed the heat lamp for her didn’t you tell her how to use it? A. Yes, plug it in and apply the heat where you had the discomfort.
“Q. You didn’t have to tell her each time she used the lamp how to use it? A. No, use it whenever she felt like it.”
Appellee’s testimony with respect to the lamp is as follows:
“Q. After that time [of appellee’s hospitalization in June *187 1940 for X-ray examination] did Dr. Kennedy bny you a lamp or get you a lamp? A. Well, I went up for a treatment and he was coming through on bis lunch hour and coming up to the offices to eat his lunch and stopped and talked to me, and he said, are you ready to go back to the office? and I said, yes, and he drove me back to the office, and he got out of the car in the back of the Sheet & Tube office and started walking up and I was in terrible pain and misery and I wasn’t getting out of the car and he was half way up to the office and turned around and he came back and he said, what is the matter? and I said, Doctor, I can’t even move, and he helped me out of the car. And he said to me that day, I am going to get you a lamp so that you can use it at home when you need it, and that is when he got me the lamp.
“Q. Did you use the lamp? A. Definitely.”
Then, after her testimony regarding the claimed July 1944 heat treatment by the company nurse, appellee testified:
“Q. Did you go after that for treatment in the service car? A. After the incident in July, no, I believe that was the ■last time I went.
“Q. Did you use your lamp at home? A. Definitely.
“Q. Had you had the lamp at that time? A. I have had the lamp for years.
“Q. Now, have you ever had Dr. Kennedy look at you after that time? A. After ’44?
“Q. Yes. A. No.
U# # *
“Q. Did you from 1944 up until the time you left the employment go to the company hospital at any time? A. No, I didn’t.
i 6 * * #
“Q. Then from that date in July, ’44 until 1951 when you quit your employment you never went back to the hospital at all? A. No, I didn’t.
“Q. Your answer is ‘no’? A. No, I didn’L
ÍÍ# * *
“Q. Who gave you that lamp? A. Dr. Kennedy got it for me.
*188 “Q. Is that the lamp we have been examining and you have been cross-examined about? A. That is the on];: one I have.
“Q. Are you still using that lamp? A. Definitely.
“Q. At whose direction are you using that lamp? A. Dr. Kennedy’s.”
We find no additional evidence in the record relating either to the acquisition of this heat lamp by appellee or the extent of her use of it. Neither is there any other evidence relating to directions given to appellee by the appellant’s physician as to how, when and for what purpose she should use it.
In its charge to the jury, the trial court stated:
“Treatment as used in the practice of medicine means the application of remedies to the curing of an injury or a disease. A remedy is a medicine or application or process of treatment for a term covering or steps taken to effect a cure of an injury or disease, and includes examination and diagnosis as well as application of remedies. The common and accepted significance of the word ‘treatment’ is the means employed in the cure of injury or disease.”
The appellee contends that each use of the infrared lamp by her at home over these years constituted a treatment which had the effect of staying the operation of the ten-year limitation statute. This then requires us to determine as a matter of law whether on the facts of this case continuing use by an employee of an infrared lamp furnished to such employee by the employer is such medical treatment as to constitute a “payment * * * of compensation or benefits awarded on account of injury” so as to toll the operation of the ten-year limitation provided in Section 4123.52, Revised Code. Pertinent citations are difficult to find in this field of law although there is authority to the effect that infrared-lamp treatments are not medical benefits.
In 10 Schneider’s Workmen’s Compensation (Perm. Ed.), 32, Section 2004(i), it is stated:
“Where doctor bills were paid by the employer and compensation carrier, and the only further treatment needed was the suggested use of an-infrared lamp, it was held the employee was not entitled to an award therefore,” citing the case of Gray v. Bird & Son, Inc. (March 31, 1943), 12 So. (2d), 828, by *189 the Court of Appeal of Louisiana, an intermediate court in that state.
In the case of LeClair v. Textron Mills, Inc., 77 R. I., 318, 75 A. (2d), 309, decided by the Supreme Court of Rhode Island, July 27, 1950, an injured employee had a “displacement of the sacrum forward on the 5th lumbar vertebra.” The court, in its opinion, quoted from the testimony of the doctor, as follows: “Q. Do diathermy treatments help the situation, Doctor? A. They relieve pain in the beginning and up to a certain length of time which cannot be determined accurately. But after a condition has existed for a considerable period of time, a good many months, there is no prospect of a cure but it does relieve pain temporarily, perhaps for 24 hours.”
The charges claimed for diathermy treatments were denied on the basis that they were not intended as a cure or rehabilitation of the injured employee.
We can find no exactly comparable case previously considered and determined by this court, but attention is called to the case of Covert v. Industrial Commission, 139 Ohio St., 401, 40 N. E. (2d), 672, decided in March 1942. In that case, the plaintiff suffered injury in 1923 and compensation was paid to him until April 30, 1927. He filed an application for modification of award for further compensation on September 3, 1937, which application was dismissed by the commission because of the ten-year limitation. The plaintiff asserted, however, that he was paid compensation and benefits as of February 21, 1928, which proved to be reimbursement for certain expenses incurred by bim in making a trip to take a physical examination for the purpose of determining whether there was a continuing compensable injury or any basis for a claim entitling claimant to further compensation. No further compensation was awarded to plaintiff as a result of the physical examination given at the time he incurred the expenses for which he was reimbursed in February 1928. The syllabus of that case states:
“The reimbursement of a workmen’s compensation claimant, for expenses actually incurred by him in making a trip to take a physical examination for the purpose o.f determining whether *190 there was a continuing compensable injury or any basis for a claim entitling claimant to further compensation, does not constitute a payment ‘of compensation or benefits,’ within the meaning of Section 1465-86, General Code, which provides that no ‘modification or change of any finding or award * * * shall be made * # * after ten years from the last payment therefore made of compensation or benefits awarded on account of injury or death.’ ”
The opinion in that case cites the cases of Rahder v. Industrial Commission (1940), 105 Colo., 594, 100 P. (2d), 1043, and Garden Farm Dairy v. Dorchak, 102 Colo., 36, 76 P. (2d), 743.
We have been unable to find any other cases which may be considered in any way pertinent to the factual situation here. Appellee has, however, clearly failed here to establish that the infrared lamp was given for curative purposes, as the testimony relates only to the palliative effect of the lamp treatments in relaxing muscles and relieving pain. Certainly if a doctor once recommended aspirin to a patient for headaches, it could not be claimed by such patient that every use of aspirin by him thereafter was under the treatment and direction of such doctor. By the same token, similar comparison may be drawn to the use of such items as electric heating pads, water bottles, ice packs, ultraviolet-ray lamps or any other commonly accepted items for home treatment for ailments. All these items are recognized as being in the class of palliatives most of the time rather than cures.
We must, therefore, conclude as a matter of law that, where an injured employee is furnished an infrared-ray lamp by an employer in a workman’s compensation case, chiefly for the purpose of relaxing muscles and relieving pain, continuing use of such heat lamp, self-administered by such employee, after termination of all compensation payments by such employer to such employee, is not such medical treatment as to constitute further “payment * * * of compensation or benefits awarded on account of the injury” so as to toll the running of the ten-year limitation provided in Section 4123.52, Revised Code.
Accordingly, the judgment of the Court of Appeals affirm *191 ing the judgment of the Court of Common Pleas is reversed and final judgment entered for the appellant herein.

Judgment reversed.

Weygandt, C. J., Zimmerman, Taet, Matthias and Bell, JJ., concur.
Peok, J., not participating.