This is a suit by Berkley A. Breland against Rainold Van-Denburgh, Inc., and Liberty Mutual Insurance Company, its insurance carrier, for compensation at the rate of $20 per week for 400 weeks for permanent disability.
The allegations of the petition are to the effect that Breland was employed by Rainold-Van Denburgh, Inc., as a carpenter at a weekly wage of $50, and that, while operating a bench saw, he suffered the loss of the first phalanx of his index finger and the first phalanx of the second finger of his left hand, and that because of his injury he is totally and permanently disabled so far as the performance of his duties of his former occupation are concerned. The receipt of $450 is acknowledged and admitted to be due as a credit against any judgment which may be rendered in his favor.
The defendants answered admitting the injury, but denied that its effect was to totally disable plaintiff and averred that the amount paid him in compensation was $500 and not $450 as alleged.
There was judgment below in plaintiff's favor as prayed for and defendants have appealed.
On the trial of the case it was admitted that plaintiff had received $500 representing compensation for a period of 25 weeks at the rate of $20 per week. It was also admitted that his weekly wage was $50 and *Page 883 
that when injured he was doing millwork — operating a bench saw. Much is made of this fact, the contention being that the plaintiff was a millhand and not a carpenter. However, it is not denied that Breland was employed as a carpenter and that he did some carpenter work while in the employ of the defendant.
[1] The question for our determination is whether the plaintiff has suffered a permanent, total disability or a permanent partial disability.
The plaintiff, while on the stand on his own behalf, was asked if he could function as a carpenter with the same facility as before the accident. He replied in the negative. When asked whether he could pick up a one inch finishing nail from the trial judge's desk, he demonstrated his inability to do so with his injured hand. He testified that he could not drive such a nail because he was likely to hit the stubs of his injured fingers with the hammer. He also testified that he could not properly use a plane because of the deficiency of his grip in his left hand on the front end of the plane. He also stated that he found difficulty in using a chisel, punch and screwdriver.
After the accident Breland worked for the same employer as a carpenter on what is known as the "Paris Park Project", where he installed locks, hinges and screws. Mr. Harry Rainold, President of the defendant company, testified that while employed on the Paris Park Project Breland worked efficiently and well as a carpenter handling nails, doing finishing work, etc., without complaint and that except for a short time immediately following his injury there was no attempt to lighten Breland's work.
At the time of the trial, Breland was employed by Marks Bros., as a painter in which occupation he was required to climb ladders carrying paint buckets, etc.
Two experts testified in the case — Dr. Edward H. Maurer on behalf of the plaintiff and Dr. George C. Battalora on behalf of the defendant. Dr. Maurer speaking of plaintiff's injury said: "* * * the index finger shows a loss of one-fourth of the middle phalanx. * * * The long finger has only remaining one-half of the middle phalanx, the amputated stubs show adequate skin coverage and are not painful to touch. The functional loss is as follows: The index finger at the proximal joint, that is, the joint nearest the hand, shows normal motion, the middle joint is enclosed (ankylosed) to 180 degrees extension. The long finger shows the same functional loss. The ring finger at the proximal joint, normal motion, the middle joint, normal motion. At the end joint 10 per cent loss in flexion. This finger reaches the palm at the bottom one inch in front of the distal crease in the hand. The motion of the little finger is normal and motions of the thumb normal."
Dr. Maurer estimated that the strength of the hand had been impaired about forty percent and that the functional loss of the hand was thirty-five percent.
Dr. Battalora, defendant's expert, did not disagree to any material extent with Dr. Maurer except that he estimated plaintiff's disability at between ten and fifteen percent.
On the whole we agree with the conclusion reached by the trial judge as to the effect of the accident. In his reasons for judgment he said: "From my observation of the plaintiff's demonstrations on the stand with the nails and screw, and the evidence, there is no doubt but that he cannot perform his duties as a carpenter with the same degree of proficiency, accuracy, efficiency and expeditiousness as before the accident, but that he can still perform some of the duties as a carpenter."
However, our Brother below felt that the holding in Stieffel v. Valentine Sugars, Inc., et al., 188 La. 1091, 179 So. 6, and Ranatza v. Higgins Industries, La. App., 18 So.2d 202; Id.,208 La. 198, 23 So.2d 45, controlled here and that they sustained plaintiff's contention to the effect that he had suffered a permanent total disability.
In the Ranatza case all of the medical experts agreed that the plaintiff, a carpenter, had sustained an injury to his right elbow, which one of them described as a dislocation and another as a tearing of the ligaments resulting in a bony block being formed during the process of healing, causing a limitation in the extension of the plaintiff's right arm. In that case plaintiff testified that he could not use his right arm to operate a saw or to handle a hammer and that in attempting to do so he caused pain and swelling in his elbow. An injury to the right elbow of a carpenter is quite different from the loss of a part of two fingers on the left hand.
In the Stieffel case, the Court held that a stenographer, who had sustained an injury *Page 884 
to his hip with the result that his right leg was shrunken in size and circumference, was entitled to total disability because the evidence indicated "that his duties embraced something more than the mere taking of stenographic dictation and the transcription thereof on a typewriter. For instance, it is admitted that when he was injured he was acting within the scope of his employment and in the furtherance of his employer's business. When injured, he was riding in a Ford truck several miles distant from the Valentine office, at seven o'clock at night. It must be assumed that availability to make such a trip was one of the duties of his particular employment — hence, that he was available to his employer as a potential messenger or courier (clerical, if you will) within the limits of usual and ordinary travel to and around the neighboring countryside — and probably to greater distances as the needs and interests of his employer might make necessary or advisable." [188 La. 1091, 179 So. 9.]
The case at bar is controlled by the holding in Falgoust v. Maryland Casualty Company, La. App., 22 So.2d 312. There a carpenter sustained an injury to his left elbow and the medical experts agreed that the injury was permanent, but differed as to the extent. One doctor estimated the loss of function to be twenty-five percent and another fifty percent. In the Falgoust case we reached the conclusion that Falgoust was entitled to compensation for a specific disability resulting in the partial loss of the use of the function of his arm.
[2] Under subparagraph 5 of paragraph (d) subsection 1 of Section 8 of the compensation statute, Act No. 20 of 1914, as amended by Act No. 242 of 1928, which provides for the permanent partial loss of the use of the function of a member, Breland, therefore, whose weekly wage was $50, would be entitled to the mean between the two extremes of the percentage of disability as estimated by the medical experts. For example, giving Breland the benefit of the doubt and considering that Dr. Battalora estimated his disability at fifteen percent and Dr. Maurer at thirty-five percent, we conclude that his disability would be twenty-five percent of sixty-five percent of his weekly wage of $50, or $8.12 per week for a period of 150 weeks, subject to a credit of $500 previously paid him.
For the reasons assigned the judgment appealed from is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of Berkley A. Brelund, plaintiff, and against the defendants, Rainold-Van Denburgh, Inc., and Liberty Mutual Insurance Company, for compensation in the sum of $8.12 per week for a period of 150 weeks or $1,218, with legal interest from judicial demand, subject to a credit of $500. Defendants-appellants to pay all costs.
Amended and affirmed.