LOTTINGER, Judge.
This is a suit in workmen’s compensation by L. B. Evans against the Louisiana State Board of Education. The Lower Court awarded judgment in favor of petitioner, and against defendant, at the rate of $9.75 per week, beginning March 4, 1954, for a period of 150 weeks, and for the sum of $315 as medical expenses. The defendant has filed this appeal.
The petition alleges that petitioner received injuries while employed as a teacher for the Louisiana State Board of Education and, as a result of said injuries lost portions of the third, fourth and fifth fingers of his left hand; that, at the time of the accident, he was teaching at the Sowela Vocational-Technical Training School at Lake Charles, Louisiana, at a rate of $3 per hour, or a daily average of $9; and, furthermore that he has incurred medical expenses in an amount not exceeding $1,-000; and further asks for attorney fees of 20% of the award. Petitioner claims total permanent loss of his left hand, in the alternative, permanent partial loss of his left hand, and, in the further alternative for judgment in the sum of $30 per week for 60 weeks.
Defendant filed exceptions of jurisdiction and of no cause of action, which were bot-h overruled. Defendant then filed answer and call in warranty, wherein Maryland Casualty Company was called in warranty. The call in warranty was dismissed on exceptions of the insurance company, and this question has not been raised on appeal. The Lower Court awarded judgment as mentioned above, and the defendant has filed this appeal.
The evidence shows that petitioner was an employee of defendant, and that he ac-cidently injured his left hand on March 4, 1954, while working, as a teacher, at the Sowela Vocational Technical School. He taught from 6:00 o'clock p. m. until 9:00 o’clock p. m. two nights a week, at a wage of $3 per hour, or a rate of $9 per day.
The facts show that on March 4, 1954, the regular class met at 6:00 o’clock p. m. As there was a school play at Ragley High School, the students were released to attend the play, and it appears that they were to return to class after the play was over. One student, Kenneth Earl Cole, elected to remain in the shop and work on his class project which was a table. When the accident occurred, petitioner was assisting *671 Cole in making the table, when his hand slipped and engaged the blade of a power saw. The accident resulted in the amputation of less than two phalanges of the middle finger, two phalanges of the ring finger, and less than two phalanges of the little finger of the left hand. The evidence discloses that, after the accident, petitioner continued in the course of his employment as a full time, vocational educational instructor for the Beauregard Parish School Board, without any loss of time or compensation, and, in addition, that he continued as part-time vocational instructor for the Louisiana State Board of Education without any loss of time or compensation until his contract terminated in April, 1954.
Petitioner’s petition was excepted to by defendant on the grounds that the Lower Court lacked jurisdiction ratione personae, and, alternatively, ratione materiae, and again alternatively that the petition set forth no cause or right of action. The grounds of said exceptions are as follows:
(1) That the State (and any of its boards which go to make up its component parts) is inherently immune to liability for tort, and
■ (2) The Legislature is without power to waive that immunity, and
(3) The Legislature has not attempted to waive that immunity in this particular case, and
(4) That, even if it has, any such attempt is unconstitutional, because of the limitations placed upon the Legislature by the Constitution.
The first contention of defendant, in effect, is that a suit against the State Board of Education is a suit against the State, and that a suit against the state can be brought only in the District Court of East Baton Rouge Parish. The trial Court held that a suit against the State Board of Education is not a suit against the State of Louisiana. In LSA-R.S. 17:2, the Louisiana Legislature has provided:
“The board shall be a body politic and corporate by the name and style of Louisiana State Board of Education and shall be domiciled in the City of Baton Rouge, Parish of East Baton Rouge. 'The board may sue and defend ’suits in all matters relating to the public schools except cases within the jurisdiction of the parish school boards.”
The Louisiana Supreme Court has recognized and upheld the corporate status of the State Board of Education. In State ex rel. Porterie v. State Board of Education, 190 La. 565, 182 So. 676, the State of Louisiana filed suit against the Board of Education seeking to injoin it from issuing and selling certain bonds authorized by the Legislature, under the theory that the said bonds would be obligations of the State and would be contrary to the constitutional provision prohibiting the Legislature from authorizing the contracting of any debt on behalf of the State. The Act authorized the issuance of the bonds as obligations of the’Board of Education, and not of the State. The Court held, in effect, that the State Board of Education was separate from the State, and obligations of the State Board of Education were obligations of that Board, and not of the State. Certainly, from the above decision of the Supreme Court, the State Board of Education must be a separate entity from the State if it can be sued by the State, and, furthermore, it must be separate if its obligations are not obligations of the State.
As the Board is separate and distinct from the State, the constitutional provision, Section 35 of Article 3 of the Constitution of 1921, LSA, requiring all suits against the State to be filed in the District Court of East Baton Rouge Parish, would not apply to suits against the State Board of Education. Section 1312 of Title 23 of the LSA-Revised Statutes of 1950 provides, in part, as follows:
“Suits against the State shall be instituted in the District Court for the Parish of East Baton Rouge, and any suit against a public board, commission, or agency of the State by an employee entitled to bring suit under the provisions' of this Chapter may be in *672 stituted in the district court either of the domicile of such public board, commission, or agency, or of the domicile of the employee as it existed at the time of the accident or injury on which the suit is based.”
Now, certainly, the petition alleges and the evidence shows that petitioner was an employee of the Board of Education and was a resident of the Parish of Beauregard at the time of the accident. The constitutionality of the above quoted statute was upheld by the Court of Appeal, Second Circuit, in Stepan v. Louisiana State Board of Education, 78 So.2d 18, wherein the same questions as to jurisdiction were raised as in the instant suit. The Court of Appeal denied a rehearing, and the Supreme Court denied a writ of certiorari in the Stepan case.
As to the exceptions filed by defendant, our conclusions are that the State Board of Education is a distinct body corporate from the State, as is provided in LSA-R.S. 17:2, that employees of the State Board of Education come within the provisions of the Workmen’s Compensation Act, as is provided in LSA-R.S. 23.T034, and that said employees may sue the State Board of Education in the District Court of the domicile of the employee at the time of the accident, as is provided in LSA-R.S. 23:1312, and that, under the jurisprudence as set forth in Stepan v. Louisiana State Board of Education, the exceptions filed by defendant were properly dismissed.
 As to the merits of the case, we do not believe that there is any question that petitioner’s employment came within the provisions of the Compensation Act. A question was raised by defendant as to whether petitioner was acting within his course of employment with the Board at the time of the accident. True, certain of his students were allowed to go to a school play and they were absent at the time' of the accident. However, student Cole was present at the time of the accident and was working on his class project. The petitioner was assisting and instructing this student at the time of the accident, and we feel that the petitioner was acting within his course of employment at the time of the accident.
The paramount question to be decided is what amount, if any, of compensation is to be allowed the petitioner. Dr. Beck-om, who treated petitioner, stated that he found petitioner had lost one phalange and a portion of another of the little finger, two complete phalanges of the ring finger, and one and a portion of another of the middle finger, all on the left hand. He testified that petitioner had suffered a 30 to 35% disability of the left hand, and, of course, said disability is permanent. The Lower Court examined petitioner’s left hand and found him unable to grasp a pencil and a pencil cardboard box, 4% inches long, 2 inches wide, and %ths of an inch thick. Petitioner was unable to grip either of those objects, except with his forefinger and thumb, the stumps of the middle finger, ring finger and little finger having insufficient flexation to permit their use in holding or gripping the objects. The Lower Court held petitioner’s disability of the left hand at 32^%, based upon Dr. Beckom’s estimate.
The applicable portions of the Workmen’s Compensation Act are as follows:
LSA-R.S. 23:1221:
“(4) In the following cases the compensation shall be as follows:
* * * * * *
“(c) For the loss of any other finger, or a great toe, sixty-five per cen-tum of wages during twenty weeks.
♦ * * * . * *
“(k) The loss of the first phalanx of the thumb or big toe, or two phalanges of any finger or toe, shall be considered to be equal to the loss of one-half of such member, and the compensation shall be one-half of the amount above specified.
******
“(o) In all cases involving a permanent partial loss of the use or func *673 tion of the members mentioned here-inabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.
“(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation here-inabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks.”
It is admitted that, insofar as subpara-graphs (c) and (k) are concerned, petitioner is not entitled to compensation for the loss of one and one-half phalanges on the middle and little fingers of the left hand. Defendant argues that petitioner is only entitled to compensation fpr the two phalanges which were removed from the ring finger. The defendant’s position is predicated primarily upon the case of Odom v. Atlantic Oil Producing Co., 162 La. 556, 110 So. 754, wherein the petitioner had lost one phalanx of the index finger, the first phalanx and part of the second phalanx of the second finger, and part of the first phalanx of the third finger. The court held that he could not recover. However, although the Odom case has not been specifically overruled, in Spillers v. Jonesboro Gin Co., La.App., 193 So. 509, 511, the Court said:
“The Odom case was decided in the year 1926, however, and since that time our highest tribunal, as well as the other appellate courts, has been more liberal in the interpretation of the provisions of the Louisiana Employer’s Liability Act; and it is because of this greater liberality that has been lately shown that we dare to disagree with and disregard such decision.”
In the Spillers case, the Court awarded for one-third loss of the hand under the provisions of subsection 1(d) 16 of section 8 of the old act, now subsection (4) (p) quoted above. It is clear that subsections (o) and (p) were inserted into the act by the Legislature to permit the courts to arrive at a reasonable and just compensation when the loss does not fall into the strict categories of the other provisions.
In Breland v. Rainold-Van Denburgh, La.App., 24 So.2d 882, the petitioner lost one and one-fourth phalanx of the index finger and one and one-half phalanx of the long finger. The medical testimony showed that the petitioner suffered a disability of 25% to his hand, and the Court awarded compensation at the rate of 25% of 65% of petitioner’s weekly wages for a period of 150 weeks.
The uncontradicted medical' testimony in the present case shows that petitioner suffered 32^ percent permanent disability to his left hand. Subsection (e) of Section (4) of LSA-R.S. 23:1221 .allows sixty-five per centum of wages during 150 weeks for the loss of a hand. .Under the provisions of said subsection (e) and subsection (o), which is quoted above, we feel that the Lower Court was correct in awarding petitioner compensation at the rate of 32J4 percent of his weekly wages for a period of 150 weeks.
The evidence shows that petitioner worked two nights a week, and that his pay was $9 for each night he worked. Defendant contends that, as- he was only a part time worker, his weekly wage under the act should be computed at $18. Petitioner, on the other hand, contends that his wage must be based upon a six day week, which would make his weekly pay, for purposes of compensation, at $54.
In Jarrell v. Travelers Insurance Co., 218 La. 531, 50 So.2d 22, the injured em *674 ployee worked only one day a week, at a wage of $3 for the day worked. Despite the fact that he worked only one day a week, the Supreme Court computed his compensation on the basis of a six day week, and allowed compensation on the basis of an $1'8 weekly wage. The Jarrell decision was followed with approval in Moore v. Aysen, La.App., 69 So.2d 551 and Martin v. Great American Indemnity Company, La.App., 75 So.2d 415, 420. In the Martin case, this Court said:
“The regular work week of the plaintiff, according to the contract of hire, was 5 days per week, or 40 hours per week, and time and a half for all time worked in excess of that number of hours, but there was no specific agreement to this effect between the plaintiff and his employer. It is our opinion that it did not make any difference; the compensation law provides that an injured employee’s compensation shall be 65% of his average weekly wages. The jurisprudence is that an injured employee’s compensation is computed on a six day per week basis even though the contract of hiring is for a less number of days. * * *
“Since the case of Jarrell v. Travelers Insurance Company, supra, the courts have held that an employee’s compensation for disability benefits has to be computed on six days per week irrespective of a specific contract of hiring for a less number of days in a work week, and it makes no difference whether he works one day, five days or less.”
Considering the jurisprudence we, therefore, feel that the Lower Court was correct in awarding compensation based upon a six day work week. As petitioner earned the sum of $9 every day he worked, his weekly wage, for the purposes of compensation was $54. The Lower Court held the disability to petitioner’s hand at 32[4%, and awarded compensation at the rate of 321/£% of $30, as $30 is the maximum amount of compensation allowed under the Act. We feel that the Lower Court misconstrued the law in computing the percentage of compensation.
The act provides for weekly compensation at the rate of 65% of the weekly wage of the injured employee, with a maximum payment of $30 per week. Subsection (o) of the Act, as quoted above, says that for “ * * * permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, * * We feel that the Lower Court should have awarded compensation at the rate of 32[4% of 65% of $54, or the sum of $11.40. Falgoust v. Maryland Casualty Company, La.App., 22 So.2d 312, Storm v. Johnson, La.App., 23 So.2d 639, Breland v. Rainold Van Denburgh, La.App., 24 So.2d 882, and Hebert v. Gates, La.App., 50 So.2d 859. However, the petitioner has failed to file an appeal or answer the appeal filed by defendant, and, therefore, we are powerless to increase the amount of award allowed below.
As petitioner has shown medical expenses in the sum of $315, we feel that the Lower Court was correct in awarding his said medical expenses.
Defendant claims that the Lower Court was wrong in allowing interest at the rate of 5% per annum on each past due installment from its due date until paid. In Reeves v. State, La.App., 80 So.2d 206, the Court held that the judgment against the state should include interest. It has, furthermore, been repeatedly held that interest on compensation claims should be computed from the due date of each payment until paid. Deshotels v. Highway Ins. Underwriters, La.App., 40 So.2d 750.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed.
Affirmed.