SAVOY, Judge.
This is a suit for workmen’s compensation benefits. On May 31, 1965, the plaintiff, Romaine Cain, sustained injuries to his hands while working in the course and scope of his employment with Henry Kinney, who was insured by a workmen’s compensation policy issued by the defendant, St. Paul Fire and Marine Insurance Company. Plaintiff was given medical treatments and was paid compensation benefits for three and six-sevenths weeks. Plaintiff instituted this suit for full benefits under the act, together with medical expenses, interest, penalties and attorney’s fees. He alleged that he had submitted a report of Dr. Norman P. Morin indicating that he was still disabled, but defendant refused to resume weekly compensation benefits or to *288 pay the doctor’s invoice. The suit was instituted on September 22, 1965.
The defendant filed an answer denying in general the allegations of the plaintiff’s petition, and further answering that it received the report from Dr. Morin on September 23, 1965, or the day after the suit was instituted, that it had not refused to pay compensation on the basis of Dr. Morin’s report, but had not had time to ascertain whether or not such payments were due. Following the filing of the answer, the defendant paid to plaintiff additional compensation benefits totaling $442.20.
After trial on the merits, the district court found plaintiff to be entitled to compensation for impairment of a physical function, being a 60% partial loss of his right index finger. The court computed that defendant had overpaid compensation benefits, and accordingly, rendered judg-' ment for the defendant. From this adverse judgment, plaintiff has appealed to this court.
Plaintiff maintains that the district court erred in not holding that he was totally disabled, or alternatively, in not holding that he was disabled at least to the time he took physical therapy treatments, in failing to afford plaintiff’s benefits on the basis of a temporary total disability rather than for impairment of a physical function, in failing to hold that plaintiff was at least entitled to a partial permanent disability of his hand, in failing to hold that plaintiff was entitled to temporary total disability in addition to partial permanent disability of his right index finger, in refusing to find that plaintiff was entitled to recover Dr. Morin’s invoice for medical services, in refusing to allow plaintiff travel expenses for treatments at the hospital, and in refusing to find that plaintiff was entitled to penalties and attorney’s fees.
Defendant maintains that the record substantiates the findings of the district court that plaintiff sustained no total disability, either of a temporary or permanent nature, and that the judgment of the district court should be affirmed.
The record shows that on May 31, 1965, plaintiff was engaged in filling his employer’s truck with butane gas, and in the process, his hands were burned when some of the gas spilled over his hands. His hands began to swell and blister, and he was treated the following morning by Dr. K. M. Lyons, a general practitioner of Sulphur, Louisiana. Dr. Lyons died prior to the trial of this case and his reports were filed in evidence by joint stipulation. These reports show that Dr. Lyons applied surgical dressings for second and third degree burns on both hands. Dr. Lyons saw plaintiff a total of twelve times from June 1 to July 2, 1965. His final report of July 4, 1965, indicated that plaintiff was able to return to work as of July 5, 1965.
Plaintiff had further trouble with his hands and did not return to work. He consulted with his attorney, and demand was made on defendant by letter received on July 19, 1965. This was the first notice of the accident to the defendant. Plaintiff’s attorney was advised that the matter would be investigated, and the case was referred to Crawford and Company, adjustors, where it was assigned to Mr. Kent Best, adjustor. An accident report was obtained from the employer on July 20, 1965. On July 29, 1965, defendant received copies of the reports of Dr. Lyons, which were forwarded to Mr. Best. Based on these medical reports, Mr. Best recommended payment of compensation for a period of three weeks and six days. He computed the amount due at $84.40 for the period June 8 to July 5, 1965, based on wages of $6.00 per day. In computing the amount to be paid, Mr. Best inadvertently made an error of $1.00 per week, and figured the weekly benefits at $22.40 rather than $23.40 per week. This error was not noticed by him or defendant until after suit was filed. Defendant paid plaintiff this amount on August 27, 1965.
*289 By letter dated August 30, 1965, plaintiff demanded additional compensation, stating that plaintiff had been furnished a house in addition to his wages of $36.00 per week, and that he was still disabled and under the care and treatment of Dr. Lyons. This letter also requested that Mr. Best forward to plaintiff’s attorney a copy of Dr. Lyons’ report. The reports were not received by plaintiff until March 10, 1966.
Plaintiff was referred by his attorney to Dr. Norman P. Morin, an orthopedic surgeon of Lake Charles, Louisiana, who examined plaintiff on September 1, 1965. Dr. Morin’s report of September 8, 1965, was sent to Mr. Best by letter of transmittal dated September 9, 1965. However, this report was not received by defendant’s claims manager until September 23, 1965, the day after suit was instituted. The claims manager referred the entire file to Mr. Edgar Barnett of the law firm of Hall, Raggio and Farrar on September 27, 1965.
Upon receiving the file on September 29, 1965, Mr. Barnett made arrangements for the examination of plaintiff by Dr. Jerome W. Ambrister, an orthopedic surgeon of Lake Charles, Louisiana, who examined plaintiff on October 19, 1965. An answer was filed on behalf of the defendant, and an investigation was made relative to the demand for additional compensation based on the rental value of the home furnished to plaintiff. It was determined that plaintiff was entitled to additional compensation based on a rental value of the house at $4.00 per week. At 65% of $4.00, this computed to $2.60 per week. After receipt of Dr. Ambrister’s report dated October 22, 1965, wherein Dr. Ambrister expressed the opinion that plaintiff had 60% disability of the right index finger, but was able to return to work, Mr. Barnett, by correspondence dated October 28, 1965, forwarded drafts to plaintiff totaling $442.60. Of this amount $427.60 was to cover compensation benefits for the period from June 1, 1965 to October 19, 1965, at $25.00 per week, less the $86.40 previously paid. A second draft in the amount of $15.00 was forwarded for permanent partial disability of the right index finger for the period from October 20, 1965 through October 26, 1965. The letter advised plaintiff’s attorney that similar drafts for the partial disability would be forwarded weekly. Mr. Barnett testified that he later determined that the amount already paid was in excess of the amount actually due, and accordingly no further payments were made.
In addition to the reports of Dr. K. M. Lyons, the medical evidence in this case consists of the testimony of Dr. Morin and Dr. Ambrister. Plaintiff received no medical treatment after his last visit to Dr. Lyons on July 2, 1965, until he was examined by Dr. Morin on September 1, 1965. Dr. Morin found plaintiff to have multiple pigment free areas on the fingers of the right hand. Similar but smaller pigment free areas were found on the index and middle fingers of the left hand. The skin along the top of the right index finger was atrophic, with a thickening of the right index proximal interphalangeal joint. Plaintiff complained of tenderness on palpation of the right index finger, where there was increased sensation from the proximal interphalangeal joint to the tip of the finger. The right index finger was cooler than the other fingers, which indicated that circulation in that finger had not been restored to normal. Although plaintiff was right handed, his left hand grip was stronger than his right hand grip. There was active motion in all fingers except the right index finger. Dr. Morin testified that plaintiff had approximately 60% disability of the right index finger at this time. Dr. Morin concluded that plaintiff was disabled and was not able to perform work as a farm hand, or common laborer, and recommended physiotherapy treatments. Plaintiff took a total of ten treatments at St. Patrick’s Hospital beginning December 14, 1965. Dr. Morin examined plaintiff again on January 17, 1966, and found that plaintiff’s condition had *290 improved considerably. At that time he found that plaintiff still had minimal residual ankylosis in the right index proximal phalangeal joint, for which he gave plaintiff a ten to twenty per cent partial disability of the right index finger, which was translated into three to .five per cent disability of the right hand.
On the examination of April 12, 1966, plaintiff stated he experienced considerable pain if he bumped his index finger or thumb of his right hand. Dr. Morin found that the over all appearance of the injured area was about the same, but that the skin atrophic had apparently completely rectified itself. There was no swelling or increased warmth or redness. There was no tenderness on palpation or evidence of muscle weakness, although there was some limitation of motion of the right index finger. The grips of the right and left hand were essentially equal, with slightly stronger grip in the left hand. It was his opinion that plaintiff then had a 20% partial permanent disability of the right index finger, which was translated into a 5% disability of the right hand. Dr. Morin indicated that the discoloration from the burn-type injury and the increased sensitivity of the right index finger were permanent changes. He did not feel that the numbness which plaintiff complained of involved the whole hand. It was the doctor’s opinion at the time of this examination on April 12, 1966, that plaintiff was able to return to his previous employment.
Although plaintiff had not complained of any blisters on the previous examinations, at the trial of the case, Dr. Morin examined plaintiff’s hand and observed three blisters on the thumb side of the proximal interphalangeal joint of his right index finger, and also a scarred area on the proximal phalanx of that finger. He indicated that these two alterations could result from the fact that the skin did not have a full return of circulation, or cutaneous sensation. Plaintiff stated these blisters had occurred from time to time as a result of his using his hands in manual labor. Dr. Morin indicated that such blisters would not be expected to result from a mild bump, but would likely require a more substantial injury. However, such blisters might arise from striking the injured area against a rough surface, where such an injury may not affect normal areas. The doctor indicated he did not think this condition was severe, but would certainly be uncomfortable and would affect plaintiff’s working capabilities to some degree. Dr. Morin indicated there was no disability to any portion of plaintiff’s left hand or fingers. He also expressed the opinion that if the blisters and ulcerations were caused by ordinary irritations and mild friction from customary work of a common laborer, such as using a shovel, that possibly there was more thickening of the joints inside than originally thought, and perhaps plaintiff’s condition was such as to be disabling. However, the doctor indicated that his physical examination did not reveal such injuries to the deeper layers of the fingers. Dr. Morin further indicated that these blood blisters could also have been caused by an injury which might have formed blood blisters on normal portions of his body. Based upon his original examinations, Dr. Morin expressed the opinion that plaintiff could return to his usual work.
Dr. Jerome W. Ambrister examined plaintiff on October 19, 1965. He noted the loss of pigmentation on the fingers of both hands. This pigment loss was not important functionally, but only from a cosmetic point of view. He found a functional impairment of the right index finger, which was stiff and had limitation of motion. He estimated that plaintiff had a resulting permanent disability of 60% to the right index finger. He felt that plaintiff’s complaints of pain on bumping the finger should progressively lessen with the passage of time. With reference to the blood blis-térs which plaintiff exhibited at the trial, Dr. Ambrister stated that such would be expected from the newly formed skin, which was atrophied to some extent, but that he *291 would expect it would require significant trauma, at a time one and one-half years post injury, to produce such blisters. It was iiis opinion that plaintiff could handle a shovel, and that any discomfort he might sustain by such activity would be minimal and not disabling. It was his opinion that plaintiff could return to his previous employment as a farm laborer.
Although Dr. Morin released him for work as of January 17, 1966, plaintiff testified he did not try to resume work at that time because his hand was hurting. He first returned to work about May, 1966, on a garbage dump truck for the City of Sulphur. He stated his index finger would hurt when he would bump it while handling trash cans, and that his wrist would hurt at times. About five weeks before the trial, he transferred to work as a watchman at a dump for the City of Sulphur.
The district court found that plaintiff was entitled to compensation for the impairment of a physical function, for sixty per cent partial loss of the right index finger, amounting to 60% of 65% of his wages for a period of thirty weeks. The court found his wages to be $40.00 per week. This was based on $6.00 per day for six days, plus $4.00 per week for rental value of the home. The court concluded that plaintiff was entitled to $15.60 per week for a period of thirty weeks, or $468.00. Since plaintiff had already received $528.60, the district court found that plaintiff had been overpaid in the amount of $60.60. The court found further that defendant was liable to plaintiff for a medical expense of Dr. Morin in the amount of $50.00, with legal interest from April 12, 1966, until paid, but in view of the prior overpayment, defendant had entirely discharged its liability to the plaintiff in this case.
After having carefully reviewed the record in this case, we find that plaintiff has not proved that he is totally disabled within the intention of the workmen’s compensation act. However, we do find that plaintiff was disabled and is entitled to weekly benefits under the act to January 17, 1966. Dr. Lyons released plaintiff to return to work as of July 5, 1965. However, the evidence shows that plaintiff was unable to work at this time. Dr. Morin found plaintiff to be disabled from performing the work of a farm hand or common laborer on September 1, 1965. His diagnosis of disability was based on the problems referrable to plaintiff’s right hand, including the skin atrophy, the increased sensation of the right index finger, the increased discomfort or pain, the lack of motion, and the weaker grip. He estimated that-plaintiff had a 60% disability of the right index finger at that time. After plaintiff received the physical therapy treatments to both hands, Dr. Morin found his condition to be considerably improved. After the examination of January 17, 1966, Dr. Morin reduced the estimate of disability to 10 to 20% of the righ£ index finger, and concluded that plaintiff was then able to return to his previous occupation. At this point, all doctors who examined plaintiff were in accord that plaintiff could return to work, and accordingly, plaintiff has not proved he was totally disabled after January 17, 1966.
There was some conflict in the medical evidence as to whether he could have returned to work as of October 19, 1965. Dr. Ambrister believed plaintiff to have a 60% disability of the right index finger at that time, but expressed the opinion that he could return to his previous employment as a farm laborer. It is noted that this is the same per cent of disability as' estimated by Dr. Morin as of September 1, 1965. However, Dr. Morin was of the opinion that plaintiff was still disabled. Plaintiff testified that his condition did not improve until he took the physical therapy treatments. Since Dr. Morin was the treating physician and examined plaintiff on three occasions, we believe he was in a better position to evaluate plaintiff’s condition than was Dr. Ambrister who only examined plaintiff once on behalf of defendant. *292 Under these facts, we believe plaintiff is entitled to the benefit of the doubt and should be allowed compensation until January 17, 1966.
Based on a wage of $40.00 per week, plaintiff is (entitled to 65% thereof, or $26.00 per week, for the 33-week period from the date of his injury to January 17, 1966, less the amount of compensation previously paid, on a dollar for dollar basis. This amounts to $858.00 less $528.60 or $329.40, plus interest on each past due installment. Additionally, plaintiff is entitled to judgment on account of unpaid medical expenses in the amount of $50.00 with legal interest from April 12, 1966, until paid.
Plaintiff maintains he should be allowed benefits for a partial permanent disability of his right hand. We find that plaintiff has prov|d he has a 60% disability to his right index finger, and that such can be translated to a 5'% disability referra-ble to plaintiff’s hands, apart from the disability of the right index finger. Under the facts as found in this case, plaintiff is limited under LSA-R.S. 23:1221(4) (b), (o) to the loss of use of the finger. White v. United States Fidelity and Guaranty Company, (La.App., 3 Cir., 1963), 158 So. 2d 210; and Babineaux v. Great American Insurance Company, 245 La. 718, 160 So.2d 591.
' Plaintiff also maintains he is entitled to the benefits of LSA-R.S. 23:1221 (4)(b), (o) in addition to benefits for temporary total disability. However, LSA-R.S. 23:1223 provides that compensation paid under LSA-R.S. 23:1221, subsections (1), (2) and (3), shall be deducted from any compensation allowed under subsection (4). See the interpretation of these provisions in the following cases: Breland v. Rainold-Van Denburgh (La.App., Orl., 1946), 24 So.2d 882; and Thompson v. Cloud (La.App., 3 Cir., 1964), 166 So.2d 28. Since we have allowed plaintiff compensation benefits amounting to more than the amount he would be entitled to for impairment of a physical function under LSA-R.S. 23:1221(4) (b), (o), and credit must be allowed for these amounts, plaintiff is not entitled to any further benefits for the partial permanent loss of use of his right index finger.
Plaintiff also requests reimbursement for expenses of making ten visits to the hospital for physical therapy treatments. However, there is no proof in the record as to the manner in which plaintiff made these trips, or the expenses incurred thereby, and we find that the district court correctly disallowed this item.
Finally, a claim is asserted by plaintiff for penalties and attorney’s fees. After having carefully considered the facts, we do not believe plaintiff is entitled to such penalties and attorney’s fees in this case. When demand was first made on the defendant, it paid benefits in accordance with the medical report of Dr. Lyons. In this connection, it is apparent that an error of $1.00 per week was made in computing the amount of compensation due. This error was not noticed until after suit was instituted and was never called to the attention of defendant. After Dr. Morin examined the plaintiff on September 1, 1965, and submitted his report showing plaintiff was disabled, which was contrary to the former report of Dr. Lyons, there was some delay involved in having plaintiff examined by an orthopedic surgeon of defendant’s choice. Thereafter, compensation was brought to date by payments made on or about October 28, 1965. At this time the defendant relied on the report of Dr. Ambrister that plaintiff was not disabled but only had a partial permanent disability to the right index finger. The defendant believed it had now paid plaintiff more than required by law and made no further payments. This position was upheld by the judgment of the district court in this case and was not arbitrary or unreasonable. We find defendant acted in good faith and that its failure to pay compensa *293 tion at a proper rate was not due to any arbitrary action on its part. Accordingly, the claim for penalties and attorney’s fees is denied.
For the foregoing reasons, the judgment of the district court is reversed and set aside, and judgment is hereby rendered in favor of plaintiff and against defendant, awarding plaintiff compensation at the rate of $26.00 per week, for a period of 33 weeks, commencing June 1, 1965, less a credit for the payments made totaling $528.60, together with legal interest upon each unpaid weekly installment from date of delinquency; and further, plaintiff is awarded judgment against defendant in the amount of $50.00, with legal interest from April 12, 1966, until paid. All costs of this proceeding in both courts are assessed against defendant-appellee.
Reversed and rendered.