MILLER, Judge.
Defendant PPG Industries, Inc. appeals the trial court’s award to plaintiff Horred Dixson of total and permanent workmen’s compensation disability payments of $35 per week not to exceed 400 weeks. Plaintiff answered the appeal seeking payments of $45 per week not to exceed 500 weeks. We affirm.
On the morning of January 6, 1969, plaintiff was operating a “Waco-rammer” which is a gasoline powered tamper weighing about 125 pounds. Plaintiff was working in a pit and the wet conditions caused the foot of the tamper to come off which in turn caused plaintiff to fall and injure his back. At 10:30 a. m. plaintiff was taken to the first aid department and was promptly referred to Dr. Jerome W. Ambrister, an orthopedic surgeon of Lake Charles.
Dr. Ambrister disagnosed a low back strain and prescribed oral medication and conservative treatment. He saw plaintiff eight times within two months and returned him to light duty several times during that period. Each time, plaintiff complained that he could not perform the light duty.
Plaintiff asked to see another physician and was referred to Dr. Edward W. Phillips, orthopedic surgeon of Lake Charles. Dr. Phillips diagnosed a back strain. He treated plaintiff for almost three months. Dr. Phillips found numbness of plaintiff’s right leg and concluded that there was reason to think that perhaps he had some nerve root compression which could result from a protruding disc. Plaintiff was sent to physical therapy to learn exercises for his back. A back brace was prescribed and furnished to plaintiff. Plaintiff was again returned to light duty, but the company refused to allow plaintiff on the job without a medical release to full duty. Plaintiff then asked Dr. Phillips for such a release and it was given.
Plaintiff went back to full employment, but was unable to do the work. Plaintiff then sought treatment from a general practitioner, Dr. Steve Price of Lake Charles. After seeing plaintiff on June 3, 4, and 24, 1969, Dr. Price diagnosed a ruptured disc and referred plaintiff to a neurosurgeon, Dr. Robert J. Goodall of Houston, Texas.
*609 On June 17, 1969, plaintiff was seen at his attorney’s request by Dr. George P. Schneider, orthopedic surgeon of Lake Charles. Dr. Schneider prescribed an intensive routine of conservative treatment.
Dr. Goodall examined plaintiff on July 7, 1969. On July 8 plaintiff was admitted to a hospital and a herniated lumbar disc was confirmed with myelography. On July 11, 1969, Dr. Goodall performed a laminec-tomy to remove the herniated disc at the L4-L5 level. Six days later plaintiff was released from the hospital and according to Dr. Goodall, plaintiff’s convalescence was uneventful.
As of January 26, 1970, Dr. Goodall concluded that plaintiff had made an excellent recovery. Plaintiff still had residual mechanical backache and had not mastered the exercises as well as he should have. Plaintiff was advised that he must continue his back exercises. Dr. Goodall discharged plaintiff to return to his previous occupation with the statement that “his back is probably stronger now than it was at the time of the injury.” Tr. 78, 79. He further stated that plaintiff had a permanent disability of the body of between five and ten percent.
Defendant had been paying $45 weekly compensation. On March 20, 1970, defendant notified plaintiff’s counsel that based on Dr. Goodall’s report that plaintiff is able to return to his usual and ordinary work, they intended to terminate workmen’s compensation payments as soon as they paid $3,215. This amount was to cover “the specific loss section of the compensation act for partial impairment of a physical function.” Plaintiff stipulated that payments at $45 per week were paid from the date of the accident through June 7, 1970.
At the Doctor’s request, plaintiff has attempted to perform light work, but according to him has suffered substantial pain during and after each attempt. He is unemployed and has lived on welfare and social security disability benefits since Tune 7, 1970.
On November 17, 1970, Dr. Goodall examined plaintiff and found that plaintiff had more pain then than was demonstrated during the January 26 examination. As of November 17, Dr. Goodall concluded that plaintiff “could return to work. I would not let him go back to heavy lifting without getting back and getting those muscles and ligaments in shape, which he should be able to do in six weeks’ to two months’ time of exercising.” Tr. 85. Because of plaintiff’s weak muscles, Dr. Goodall “would restrict him to forty-fifty pounds.” Tr. 87.
Dr. Norman P. Morin, an orthopedic surgeon of Lake Charles, examined plaintiff at the request of plaintiff’s attorney on May 11, 1970. He was of the opinion that plaintiff had made a satisfactory recovery from the surgery and that he had a 10% partial permanent disability of the body as a whole. Dr. Morin found that plaintiff’s responses to four different tests were inconsistent and that plaintiff exaggerated his complaints. Nevertheless, Dr. Morin concluded that plaintiff would probably experience disabling pain if he were required to lift 50 or 60 pounds occasionally and even though he would not have to bend or stoop or twist very much. Tr. 241. If plaintiff was a laborer limited to janitorial work or a service station attendant, then Dr. Morin concluded that plaintiff could work with “only a possibility that he would get pain in his back.” Tr. 243. These opinions were well supported by a detailed explanation at Tr. 251, 2.
Dr. George P. Schneider saw plaintiff after the surgery on November 13, 1969, February 23, 1970 and on December 11, 1970. He found that plaintiff was unable to return to employment. As of February 23, 1970, he thought that plaintiff might be able to return to employment in six months. After the December 11 examination, Dr. Schneider concluded that plaintiff had reached maximum improvement as far as specific conservative treatment, but that he had persisting disability referable to the lower back of such a degree that it would *610 preclude his returning to any type of heavy manual labor. Dr. Schneider allowed a 35% residual disability of the body as a whole. He thought it possible that spinal fusion of the fourth lumbar segment to the sacrum would improve plaintiff’s residual disability component. Tr. 288.
Dr. Edward W. Phillips examined plaintiff one time after the surgery and then on December 14, 1970. He concluded that plaintiff had a 10% disability of the body. On direct examination he believed that plaintiff could go back to his usual and ordinary work at PPG without substantial pain. On cross examination, Dr. Phillips thought “we’d have to be careful about hiring him” for work where a substantial amount of his duties in each workday included operating a 125 pound tamper and carrying scaffolding in excess of 60 pounds in weight, and stooping, bending and twisting. Dr. Phillips was not sure that plaintiff could stand up under continual work of that nature. Such work would probably give him pain to such an extent that he wouldn’t be able to do it on a continual basis. Tr. 341.
After the surgery, Dr. Jerome W. Am-brister examined plaintiff on March 13, 1970 at the request of the Vocational Rehabilitation Disability Terminations. Dr. Ambrister was not allowed to testify concerning his findings at that examination because these findings were confidential to the government. On December 8, 1970, Dr. Ambrister saw plaintiff at defendant’s request. He thought that plaintiff was physically able to return to his previous employment. He estimated that plaintiff had a resulting disability of 10% of the body as a whole which would be permanent. On cross examination Dr. Ambrister testified that “anybody who has had a laminec-tomy if you have your choice would not be assigned any heavy duties.” Tr. 367.
It was established that plaintiff had worked for this employer for more than four years; that although he was a laborer, he was good as an operator of jackhammer and tamper equipment; that work with this equipment brought premium pay; and that a substantial part of Mr. Dixson’s work was as operator of such equipment. When the tamper is in operation, the operator only has to guide it and this can be done with one hand. But at times the equipment has to be lifted, worked on and loaded. Plaintiff was expected to perform this work. Tr. 380.
Plaintiff’s superintendent, Mr. Emory LeBlanc, was asked on cross examination at Tr. 381:
“Q. If you had a laborer that a doctor didn’t want to lift 100 pounds, would this be the type of laborer you’d want to work for you?
“A. If I had a laborer that a doctor didn’t want to lift 100 pounds, he wouldn’t work for me.”
On this evidence defendant appellant has failed to establish manifest error in the trial court’s determination that plaintiff would subject himself to further injury by returning to his usual and ordinary work. Plaintiff is at a competitive disadvantage in trying to find similar work.
It is on this basis that we distinguish the cases of Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1963); Romero v. Argonaut Insurance Company, 227 So.2d 623 (La.App. 3 Cir. 1969); Ventress v. Danel-Ryder, Inc., 225 So.2d 765 (La.App. 3 Cir. 1969); Hammond v. Sewerage & Water Board of New Orleans, 204 So.2d 699 (La.App. 4 Cir. 1967); and Coffey v. Transport Insurance Company, 138 So.2d 158 (La.App. 4 Cir. 1962). In these cases the claimants had a loss of function of some 10% of the body as a whole resulting from a laminectomy, but were nevertheless not totally and permanently disabled because the nature of their disability was such that it did not interfere with the employee’s performance of his prior occupation. The awards were limited to reasonable compensation in proportion to *611 awards of compensation for specific losses. LSA-R.S. 23:1221(4) (p).
In the instant case, plaintiff has not returned to work. His superintendent testified that he could not come back on the job unless he could lift over 100 pounds. Doctors Schneider and Morin are adamant that plaintiff should not be required to lift over 100 pounds. Doctors Phillips and Ambrister would prefer that plaintiff not be subjected to such loads. Dr. Goodall testified that additional exercises must be undertaken and performed by plaintiff before he could perform such work. These facts do not support defendant appellant’s contention that the trial court was manifestly wrong. The award of total and permanent disability benefits is affirmed.
Plaintiff appellee contends that the compensation benefits should be based on Act 25 of the Extraordinary Session of the Legislature of 1968 which provided $45 weekly benefits for up to 500 weeks for total and permanent disability. But this act did not go into effect until 12:00 noon on January 6, 1969. Since the accident occurred and the disability manifested itself prior to 12:00 noon on that date, the trial court correctly determined that the weekly compensation rate was $35 for a period of 400 weeks.
Defendant appellant paid $45 weekly payments for the period January 6, 1969 through June 7, 1970, and here seeks credit for the $10 weekly overpayment. It is defendant’s position that the overpayment should be credited against any award on a dollar for dollar basis rather than on a weekly basis. He cites the Ventress, Romero and Hammond cases, supra. The cited cases applied LSA-R.S. 23:1223 which allows credit where compensation is awarded under LSA-R.S. 23:1221(4). The statute and the cases do not allow credit on a dollar for dollar basis where total and permanent disability is awarded under LSA-R.S. 23:1221(2), the section under which compensation is here awarded.
Our jurisprudence appears settled that voluntary payments in addition to compensation cannot be claimed as a credit unless it was expressly so agreed between the employer and employee. Walters v. General Accident & Fire Assur. Cor., Ltd., 119 So.2d 550, at 560 (La.App. 1 Cir. 1960); Cain v. St. Paul Fire and Marine Insurance Co., 201 So.2d 286, at 293 (La.App. 3 Cir. 1967).
There is no suggestion that plaintiff agreed that defendant would be entitled to a credit for the voluntary overpayment. It was only at trial that defendant for the first time noted that this accident occurred before Act 25 of the Extraordinary Session of the 1968 Legislature became effective.
Due to a clerical error, the trial court judgment allowed credit for compensation paid through January 5, 1970 when it was stipulated that compensation had been paid through June 7, 1970. The judgment is amended to allow defendant credit on a week by week basis for compensation paid through June 7, 1970. Otherwise the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant appellant.
Amended and affirmed.